ADELINE J. FRAWLEY *vs.* MARY E. FORREST.

Plymouth.    October 8, 9, 1941. — December 30, 1941.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Way*, Private: creation, extent, infringement, enforcement of easement. *Real Property*, Remainder, Tenancy in common. *Easement. Tenants in Common.*

A certain deed by tenants in common to one of them of a parcel of land bounded on a passageway to which the grantors retained title, but silent as to any rights therein, gave the grantee a right of travel over the passageway, as then existing, including not only the portion contiguous to the granted parcel but also the portion lying between that parcel and a nearby public way.

A deed of real estate containing a reservation of the premises to the grantor for life operates to seise the grantor of a life estate and to vest the remainder in the grantee.

A remainderman of real estate may have redress at law or in equity for an infringement of an appurtenant right of way of a character injurious to the remainder.

The discharging of water upon a private way from drains connected with the conductors of a nearby house, the extension of a lawn into the way, and the placing of a block of stone or cement in the way in such a position as to interfere with the passage of vehicles thereto from the driveway of the dominant tenement were acts for which in the circumstances the owner of a remainder in the dominant tenement was entitled to redress.

BILL IN EQUITY, filed in the Superior Court on October 13, 1939.

The properties described in the opinion are shown on the sketch on page 448, *post*.

An interlocutory decree confirming a master's report was entered by order of *Brogna*, J. By order of *Forte*, J., the following final decree was entered:

"1. The plaintiff, her heirs and assigns have a right of way for foot and vehicular passage sixteen and one half feet in width from Cottage Street . . . to her property . . . more particularly described . . . as follows: . . . [then follows a description of the way].

"2. That the defendant . . . be and is hereby directed and ordered to remove the three tile drains which carry water into said right of way, ashes, grass and other debris, a block of stone or cement and other obstructions in said right of way within thirty days from the entry of this decree.

"3. That the defendant, her agents and servants be permanently enjoined from in any way obstructing the free use of said described right of way.

"4. That the plaintiff be and is hereby awarded damages in the sum of . . . $20 . . . and costs . . . ."

The defendant appealed from both decrees.

*W. J. Good*, for the defendant.

*W. F. Hallisey*, for the plaintiff.

Cox, J. This is a bill in equity in which the plaintiff alleges that she is the owner in fee of certain real estate, that the defendant is owner in fee of real estate "next adjacent" to the plaintiff's land on the west, and that included in the grant to the plaintiff is a right of way, sixteen and one half feet wide, that runs from Cottage Street in Randolph "along" the westerly side of her land. Further allegations are that the defendant has placed large quantities of ashes and gravel upon the way, has substantially raised its grade and has placed pipes upon her land and over the right of way for the purpose of conveying water from the conductors of her house. The plaintiff prays for an injunction, damages and for further relief.

The defendant's answer denies that the plaintiff has a right of way and alleges that, if it is found that she has placed the pipes as alleged, she has maintained them for a period of over twenty-nine years and that she has a right to maintain them "to the said right of way."

The suit was referred to a master whose report was confirmed by interlocutory decree, and a final decree was entered granting the plaintiff relief and damages. The defendant appealed from the interlocutory and final decrees. The evidence is not reported, and the master's findings of fact are conclusive unless it appears from the report itself that they are plainly wrong. This court must decide the suit upon the report in accordance with its own

judgment.    *General Fruit Stores, Inc.* v. *Markarian,* 300 Mass. 90.

The master found that in 1856 the heirs of one Thayer owned a farm in Randolph which included the lots of the plaintiff and the defendant, and other land. The easterly line of the farm began at Short Street and ran in a northerly

direction by two courses along the easterly line of what is now School and Moulton streets to Cottage Street. Said easterly line then continued in exactly the same course as the one just south of Cottage Street to the southwest corner of the plaintiff's lot, so called, hereinafter referred to as Lot A. From this corner the line of the heirs ran easterly along the northerly line of another lot of land, not owned by them, hereinafter referred to as Lot B. Lot B was bounded on the south by Cottage Street, on the west by land of the heirs, and on the north, in part, by Lot A, that is, its westerly portion was between Cottage Street and Lot A, and its westerly bound was the easterly line of the heirs' land. The line of the heirs running easterly from the south-westerly corner of Lot A, which was the southerly line of the Lot A, extended to a corner, where it turned and ran northerly along the easterly line of Lot A and other land of the heirs, hereinafter referred to as Lot C. The south-east corner of Lot C and the northeast corner of Lot A coincided. The southerly bound of Lot C coincided with the northerly line of Lot A, extended to the west across the northerly end of the passageway in question, and from there on to the west it coincided with a part of the northerly line of the defendant's lot, hereinafter referred to as Lot D.

In June, 1856, said heirs conveyed Lot C, together with "the privilege of a passway one rod wide through land of grantors to 'Cottage Street' and entering upon Cottage Street nearly at right angles with the northerly line of said street and at a point opposite the passway on the southerly side of said street running southerly from said street through land of the grantors and the school house lot to Short Street, or however otherwise said premises may be bounded, measured or described." Prior to this deed and in April, 1856, said heirs conveyed to the town of Randolph a parcel of land to the south of Cottage Street. This deed recites, among other things: "reserving for the benefit of the grantors, their heirs and assigns, the free use and enjoyment in common with the grantees, their successors and assigns, of a common pass way one rod in width upon the easterly

line of the lot hereby granted, the entire length thereof; and we the said grantors do further give, grant, bargain, sell and convey unto the said inhabitants, their successors and assigns, the extension of the above-named common pass way one rod in width through the remaining lands of the grantors, both north and south to the public highways of the town aforesaid." The easterly line of this common pass way coincided with a part of the easterly line of the heirs' land, hereinbefore described as extending from Short Street to Cottage Street.

On June 5, 1857, said heirs conveyed Lot A to two of the heirs, bounding it "westerly by a passway" and, on the same day, said heirs conveyed Lot D to one of the heirs, the description of which, in so far as material, is as follows: "situate on the northerly side of Cottage Street in said Randolph and bounded as follows: beginning at a corner formed by Cottage Street and a passway running northerly, thence northerly on said passway to" Lot C. In all subsequent conveyances of lots A and D they were described as bounding on the way, variously described as "way," "private way," "passway," "passage way," "driftway" and "right of way." In the respective chains of title of the parties, other than describing the lots conveyed as bounding upon the way, there is no express reference to any easement in the way except in the deeds to the plaintiff and to her grantor.

Prior to 1934, no easement, other than the right to use the way, was ever claimed by the defendant or her predecessors in title. They recognized the right of the occupants of lots A and C to use all parts of the way for passage with vehicles and on foot to and from Cottage Street and lots A and C, and prior to 1934 such uses as were made of the land within the limits of the way by the defendant and her predecessors in title were not under any claim of right nor with the intention of depriving the owners of lots A and C, or any of them, of any vested right in the way. The defendant now contends that the plaintiff has no right or interest in the passageway leading northerly from Cottage Street.

1. When a grantor conveys land as bounded by a street or way, this is not merely a description by the grantor, and his heirs and those claiming under him are estopped to deny that there is a street or way to the extent of land so bounded on the way, and the grantee acquires by the deed a perpetual easement and right of passage on, upon and over it. This is a right, not only coextensive with the land conveyed, but for the entire distance of the way, as it is then actually laid out or clearly indicated and prescribed. *Old-field* v. *Smith*, 304 Mass. 590, 595–596, and cases cited. Such a deed gives the grantee rights by estoppel not only in that part of the passageway that lies opposite his land, but also, by necessary implication, to such outlet or termination as will make the way available for its intended purpose. If nothing else is contained in the deed to define it, the extent of the grantee's rights beyond the limits of his land will depend upon, and may be shown by, extrinsic facts, as they existed at the time of the conveyance. *Fox* v. *Union Sugar Refinery*, 109 Mass. 292, 295–296. *Driscoll* v. *Smith*, 184 Mass. 221. See *Tufts* v. *Charlestown*, 2 Gray, 271; *Lemay* v. *Furtado*, 182 Mass. 280; *Prentiss* v. *Gloucester*, 236 Mass. 36, 52–53. A way acquired in this manner is not a way of necessity. *New England Structural Co.* v. *Everett Distilling Co.* 189 Mass. 145. *Hill* v. *Taylor*, 296 Mass. 107. See *Walker* v. *E. William & Merrill C. Nutting, Inc.* 302 Mass. 535, 539–540.

There is no contention in the case at bar that either party owns in fee the passageway in question (see *Erickson* v. *Ames*, 264 Mass. 436), and, the right of way not being one of necessity in the ordinary sense, it is unnecessary to consider cases involving rights of way created by necessity. The case at bar is distinguishable from *Baker* v. *Crosby*, 9 Gray, 421. Nor is the defendant's contention well founded that the first deed in the plaintiff's chain of title gave no rights in the passageway on the theory that it was a deed of cotenants. The master finds that the first deed of Lot A, as well as that of Lot D, was from "the heirs of . . . Polly Thayer," and from their conveyances of lots A, C and D, it seems apparent that they intended to leave the passageway

open for the benefit of the owners of the adjoining and abutting lots, and the master so finds. See *Morgan* v. *Moore*, 3 Gray, 319, 322.

It was necessary to determine the precise location of the right of way. This the master has done. It is unnecessary to describe in detail his findings in this particular. It is enough to say that those findings are correctly incorporated in the final decree, and that his findings that the owner of Lot A had a right of way in common with the owners of lots C and D over its entire area, commencing at Cottage Street and ending at the southerly bound of Lot C, were warranted.

2. The deed through which the plaintiff claims, dated November 15, 1938, reserves to the grantor and her husband a life estate during the lifetime of either or both of them. This reservation operated to seise the grantor of a life estate, and, by operation of law, to vest a remainder in the plaintiff. *Thayer* v. *Shorey*, 287 Mass. 76, 78–79. It would seem, from an examination of the master's report, that the case was heard by him upon the theory that the plaintiff was entitled to relief if her use and enjoyment of the way had been wrongfully interfered with.

The defendant contends that the plaintiff has no right to maintain her suit, inasmuch as her rights as·remainderman have not been interfered with or damaged.

3. A reversioner may maintain an action for an injury done to his reversion, *Ingraham* v. *Dunnell*, 5 Met. 118, 124, and so may a remainderman for an injury to his remainder. In order to recover, he must show an invasion of his rights, and in *Hastings* v. *Livermore*, 7 Gray, 194, which was an action of tort, it was said, at pages 197–198, that on proof of this, "however slight the damage, he would have been entitled to a verdict. For an injury to the possession, the tenant only has his remedy; for an injury to the reversion, the right of action is in the owner." "The plaintiff [a reversioner] might well maintain this action, therefore, by showing that the acts of the defendants were of a nature to cause a disturbance of his right, and cause injury to the reversion."

The right of the plaintiff in the passageway is an easement of travel, the enjoyment of which will be available to her and her heirs and assigns at the termination of the life estate. At some time she or they will have a right to use the way in question. For present purposes it may be assumed that she will come into the enjoyment of that right, and when she does, she is entitled to have that right come to her unimpaired and undiminished by any wrongful acts of another. See *Murphy* v. *Whitney*, 140 N. Y. 541, 547. In a case of this character, the particular tenant may recover for damages only to the present enjoyment, and the remainderman or reversioner for damages only to the remainder or reversion. The principle is well established. Its application is not too easy. Perhaps one consideration is that the plaintiff has a right to sell her remainder even now, before the termination of the life estate. It would seem to follow that if there is a permanent injury to the remainder, this will affect the market value of the plaintiff's land. See *Jordan* v. *Benwood*, 42 W. Va. 312, 321; *Jesser* v. *Gifford*, 4 Burr. 2141. There may be an injury to a remainder, however, which is of such a character that the remainderman may invoke a court of equity for the protection of his rights. See *Ingraham* v. *Dunnell*, 5 Met. 118, 125. But the question whether there has been an injury done to the remainder is quite independent of whether the remainderman may have relief at law or in equity.

The master finds that about twenty-nine years ago sections of three tile drains were installed by the defendant's grantor from the house on Lot D in the direction of the right of way. These drains have been extended from time to time, in part by the defendant, in order that their outlets could be kept open. Conductor pipes upon the defendant's house discharge water through these drains upon the way in greater volume and with much more force and velocity than would be the case if the drains were not there. This causes a depression near the outlet of each drain in which water stands, and accelerates erosion to a greater extent than would naturally occur. The drains extend across the

westerly line of the way, but the master finds that they have not been maintained in the way long enough to give the defendant a claim of right to maintain them.

The defendant and her grantor have encroached upon the way by extending their lawn upon it, with the result that the level of the way has been raised several inches along its westerly line. No right to maintain this encroachment has been acquired by adverse user. The defendant from time to time has dumped ashes and débris upon the way, but not for the purpose of repairing it and making it more safe for purposes of travel. Soon after the plaintiff acquired title to Lot A, the defendant set a block of stone or cement in the way in such a position as to obstruct the passage of vehicles on the plaintiff's driveway that leads to the way.

It well may be that the dumping of ashes and débris on the way has been so casual that it alone could not be said to be an injury to the remainder, but we are of opinion that the other acts of the defendant are. We reach this conclusion with some hesitation. In *Ingraham* v. *Dunnell*, 5 Met. 118, 125, it was intimated that the pollution of a watercourse was not in the nature of a permanent injury to the reversion. But that suit was not decided upon that ground. In *Hastings* v. *Livermore*, 7 Gray, 194, it seems to have been assumed that a reversioner was damaged where the defendant had obstructed a watercourse through which the plaintiff had a right to drain his land; and in *Ashley* v. *Ashley*, 4 Gray, 197, it was said that a reversion was damaged by the stopping of a watercourse through the land of the defendant by which the reversioner's right of way was rendered "miry" and impassable. It is true that in that case the reversioner, by virtue of an agreement with the life tenant, had actual possession. But nevertheless, Shaw, C.J., said that there was a damage both to the reversion and to the right of possession. The case at bar is distinguishable from *Sparhawk* v. *Bagg*, 16 Gray, 583, where the act complained of was the passage of teams over the way. It is true that the remainderman, having no right to possession until the death of the life tenant, or not being

bound to enter until then in order to establish his claim, is not barred by adverse possession which might result against the life tenant, *Daley* v. *Daley*, 300 Mass. 17, 23, but it well may be an additional reason for giving the remainderman a right to sue for injuries to the remainder during the existence of the life tenancy, that, from the death of witnesses, evidence of the acts amounting to injury might be lost. See *Shadwell* v. *Hutchinson*, 3 C. & P. 615.

As to the extension of the defendant's lawn upon the way, the master found that she had maintained and used this encroachment since the conveyance to the plaintiff "as though it were a part of her own property." In the case of *Metropolitan Association* v. *Petch*, 5 C. B. (N. S.) 504, it was said, at page 512, that while it is true that a reversioner can sue only for a permanent injury to his reversion, nevertheless, if there had been any obstruction operating in denial of the right, it would be different, citing *Shadwell* v. *Hutchinson, supra.* This was said in the discussion of the case of *Jackson* v. *Pesked*, 1 M. & S. 234, where it was said that a reversioner could sue only for a permanent injury to his reversionary interest. This last case is cited in *Hastings* v. *Livermore*, 7 Gray, 194, 198, where, as already appears, the court said that the reversioner might well maintain his action by showing that the acts of the defendants were of a nature to cause a disturbance of his right, and cause injury to the reversion. In the case of *Young* v. *Spencer*, 10 B. & C. 145, also cited in the *Hastings* case, it was said, on the question of whether there is an injury to a reversionary right, that the old authorities are not reconcilable with each other but that it seems to be clearly established that if anything be done to destroy the evidences of title, an action is maintainable by the reversioner. See *Tucker* v. *Newman*, 11 Ad. & El. 40.

It seems unnecessary to analyze further cases where the question of whether the remainder or reversion has been damaged is discussed. It is enough to refer to some of them. See *Baker* v. *Sanderson*, 3 Pick. 348, 352; *Cushing* v. *Adams*, 18 Pick. 110, 112, 113; *Jordan* v. *Benwood*, 42 W. Va. 312,

320, 321; *Tinsman* v. *Belvidere Delaware Railroad*, 25
N. J. L. 255 (see cases collected); *Brown* v. *Bowen*, 30 N. Y.
519; *Schaufele* v. *Doyle*, 86 Cal. 107, 110; *Cherry* v. *Canal
Co.* 140 N. C. 422; *Robertson's Administrator* v. *Rodes*, 52
Ky. 325; *Webb* v. *Jones*, 163 Ala. 637. Compare *Sparhawk
v. Bagg*, 16 Gray, 583, 584; *Kimball* v. *McIntosh*, 134 Mass.
362; *Smith* v. *New England Aircraft Co. Inc.* 270 Mass.
511, 531; *Cooper* v. *Crabtree*, 19 Ch. D. 193; *Walker* v.
*Clifford*, 128 Ala. 67.

4. If the life tenant was a necessary party (see *Ingraham*
v. *Dunnell*, 5 Met. 118, 125; *Cadigan* v. *Brown*, 120 Mass.
493, 494–495), that question has not been raised. *Warecki*
v. *United States Fidelity & Guaranty Co.* 270 Mass. 233,
235–236. *Manfredi* v. *O'Brien*, 282 Mass. 458, 462. See
*Turner* v. *United Mineral Lands Corp.* 308 Mass. 531.

5. The plaintiff could have brought an action at law to
recover her damages. *Ingraham* v. *Dunnell*, 5 Met. 118,
124. *Putney* v. *Lapham*, 10 Cush. 232, 234. *Hastings* v.
*Livermore*, 7 Gray, 194. But in an appropriate case the
aid of equity may be invoked to protect rights in an ease-
ment. *Nash* v. *New England Mutual Life Ins. Co.* 127 Mass.
91, 97. Moreover, if the plaintiff has an adequate remedy
at law, the defendant must be held to have waived that
question. *Wickwire Spencer Steel Corp.* v. *United Spring
Co.* 247 Mass. 565, 569. *Hawkins* v. *Gold Brand Confec-
tionery, Inc.* 268 Mass. 166, 171.

6. The defendant's exceptions to the master's report must
be overruled. They relate to findings of fact, and his alleged
failure to construe two deeds and the plans therein referred
to. *Morin* v. *Clark*, 296 Mass. 479, 484. So far as these
exceptions are concerned, no error of law appears on the
face of the report.

7. In one particular, we think that the final decree should
be modified. The plaintiff was awarded damages in the
sum of $20. This finding appears to have been based upon
an interference with the plaintiff's assumed present use of
the passageway. We do not construe this finding as relat-
ing to damage to the remainder.

It follows that the interlocutory decree is affirmed, and that the final decree, modified in accordance with this opinion, is affirmed, and the plaintiff is to have her costs.

*Ordered accordingly.*