HAAB v. MOORMAN.

1. EASEMENTS—DEEDS—APPURTENANT RIGHT-OF-WAY.
    Merely because a 4-foot right-of-way was specifically granted to grantees in a deed would not preclude the grantees from believing they had rights to any of alley 14.25 feet wide and claiming an appurtenant easement of passage therein.

2. QUIETING TITLE—APPURTENANT EASEMENT—ALLEY.
    A proceeding to quiet title would affect record title only and would not necessarily be concerned with any question as to appurtenant rights in an adjacent alley.

3. ESTOPPEL—ALLEYS—PAVEMENT—EVIDENCE.
    Defendant landowners were estopped from claiming that undedicated strip of land which had been used as an alley for over 100 years was not an alley, where evidence shows they and their predecessors had acquiesced in its use for such purpose, including pavement thereof by plaintiffs. ·

4. EASEMENTS—ALLEYS—WAY OF CONVENIENCE.
    An alley is a way of convenience and need have no certain type of ending or beginning.

5. SAME—EXTINGUISHMENT—MERGER OF DOMINANT AND SERVIENT ESTATES—MODIFICATION.
    Long-established easement in alley was never extinguished, where there had never been a complete merger of the dominant and

---

REFERENCES FOR POINTS IN HEADNOTES

[3, 9] 17 Am Jur, Easements § 74.
[6] 17 Am Jur, Easements §§ 103, 105.
[6] Rights arising from reciprocal use by adjoining owners of strip along boundary for purpose of passageway. 98 ALR 1098.
[14] 17 Am Jur, Easements § 127.

servient estates, and continues as an alley by serving all purposes it had ever served even though the nature of the alley has been substantially modified.

·6. SAME—ALLEYS—PRESCRIPTION.

An alley which has been in use for over 100 years at the rear of plaintiffs' places fronting on a city street and which has been used for over 50 years to a width of 14.25 feet *held*, a right-of-way in which plaintiffs have prescriptive rights, there being no plat or dedication or assessment for taxation.

7. SAME—PRESCRIPTIVE RIGHTS—EVIDENCE—ESTOPPEL.

Prescriptive rights in alley by owners of property whose deeds described their property as abutting disputed alley would be delimited by proofs adduced, including extrinsic facts, indicating what was visible and was being used as such at time party seeking to assert estoppel takes the property.

·8. EQUITY—AMENDMENT OF BILL—EVIDENCE.

Bill of complaint wherein plaintiffs asserted prescriptive rights in alley 10 feet wide is considered as amended on appeal so as to include the entire alley with a width of 14.25 feet, where such amendment conforms to the proofs made in the case (Court Rule No 72 [1945]).

·9. ESTOPPEL—ALLEYS—DESCRIPTION IN CONVEYANCE.

A grantor is estopped to deny existence of an alley or passageway as against the grantee, where description in the conveyance bounds the tract by a clearly indicated private alley or passageway and the grantee acquires a right of passage for the whole length of such way so far as it is upon the grantor's land, and not merely for the length of the boundary of the land conveyed.

10. EASEMENTS—DEEDS.

A way, acquired by deed which conveys land bounded by a street or way, is not a way of necessity.

11. SAME—RESTRICTION—RECORDING—ESTOPPEL.

Owner of servient estate who failed to record an agreement restricting duration of easement to period land was vacant and until used for building purposes was estopped to deny rights of grantee of dominant estate who purchased without knowledge of such restriction, and his successors even though the successors had knowledge of such restriction.

12. SAME—ESTOPPEL.

No estoppel can exist in favor of owner of claimed dominant estate, where party against whom estoppel is claimed to have been operative had deeded away such parcel before obtaining record title to disputed alley.

13. SAME—ESTOPPEL.

No estoppel can exist in favor of owner of claimed dominant estate, where party against whom estoppel is claimed to have been operative had never, owned the parcel to which easement in an alley is claimed to be appurtenant before or after acquiring record title to disputed alley.

14. SAME—PRESCRIPTIVE USE—TACKING—CONVEYANCE.

Plaintiff who owned land adjacent to alley in which he claimed a perpetual easement *held*, to have an easement by prescription, where, although he was unable to tack his adverse holdings to that of predecessor, there was a predecessor in title to the dominant estate who had established in his own name a valid easement without tacking, for, once established, the right-of-way was an easement appurtenant which passed by the deed of the dominant estate although not expressly mentioned in the instrument of transfer and even without the word "appurtenances," and defendants failed to sustain burden of showing plaintiff's use was permissive.

Appeal from Washtenaw; Boardman (Harry D.), J., presiding. Submitted October 12, 1951. (Docket No. 6, Calendar No. 45,095.) Decided January 7, 1952. Rehearing denied March 6, 1952.

Bill by Otto H. Haab and others against George Moorman and others to restrain obstruction of alley. Decree for defendants. Plaintiffs appeal. Reversed.

*Burke, Burke & Smith* (*Lawrence, Ulrich & Tripp,* of counsel), for plaintiffs.

*Cleary, Weins, Jackson & Scallen,* for defendants Moorman and others.

*DeVine & DeVine* (*Claude S. Rogers,* of counsel, on application for rehearing), for defendants Carras.

BUTZEL, J.   Plaintiffs seek to enjoin defendants from obstructing a vacant areaway lying between the properties of the respective parties in the city of Ypsilanti.   For an understanding of the issues, we attach a rough sketch of the area in dispute, the subject of this litigation, and also of the neighboring

property. For brevity we refer to the disputed property as an alley. Otto and Oscar Haab, Peter Karson and John Atsalas, plaintiffs, were the owners of the properties on the north side of Michigan avenue in Ypsilanti, Michigan, as shown by the sketch. Atsalas died after the suit was begun and the property designated as Atsalas' in the sketch has been conveyed to James Vourlitis, who has been substituted for Atsalas as party plaintiff. In November, 1946, defendants Gus Carras and Christ Carras entered into a land contract to purchase what appears on the sketch as the Ambassador Restaurant and the alley adjoining it on the south. The contract, however, states that it is subject to a 4-foot right-of-way north of plaintiff Haab's property and which is to be used in common with others. Mrs. Gus Carras is joined as a codefendant. George Moorman, *et al.,* their vendors who still hold the title to the Carras property, were also made defendants.

The record is not very clear as to the incidents that led up to the filing of plaintiffs' bill for injunctive relief to prevent defendants from closing the alley. Plaintiffs' attorney states the bill was for the purpose of preventing "defendant" from building a proposed building in the disputed strip. The judge in his opinion denying plaintiffs injunctive relief stated that an attempt by defendants Carras to construct a wall southerly across the disputed strip precipitated the litigation. Stripped of verbiage and notwithstanding an unsatisfactory record, the main purpose of the bill is to establish plaintiffs' claim to an easement to use the alley with other abutting property owners. Just whether Carras intended to block the entire 14.25 feet of the alley, which includes the 4 feet which his contract with the Moormans gives him only as a right to use in common with others for alley purposes, is not shown. Plaintiffs claim an ease-

ment not only in the 4 feet, but also in the additional 10.25 feet north thereof.

The bill of complaint described the alley as 10 feet wide; as a matter of fact it is approximately 14.25 feet in width, or thereabouts, and the length of the disputed part of the alley involved in the petition in this litigation is 52 feet. There are various obstructions in the alley which later will be described in detail. Plaintiffs in the present suit make no objections to these obstructions, nor are defendants directly interested in them in the present litigation.

In 1923, a competent surveyor and engineer drew a plat from which we prepared the abbreviated rough sketch attached to this opinion. The plat was never recorded. Originally the rectangular parcel, about 36 feet by 14.25 feet, north of the Atsalas property and marked barbershop, was vacant so that the alley extended westerly into Huron street. All of the land fronting on the north side of Michigan avenue, running in an easterly direction to the Huron river from Huron street, slopes downward at a rather sharp grade. The grade of Huron street thus was higher than that of the alley, and a stairway had been built at Huron street leading down into the alley for the use of those who wished to go from Huron street down to the alley with its lower level. When the barbershop was first built on a 28-foot by 14.25-foot site, there still remained the stairway (according to the 1923 unrecorded plat) that provided access from Huron street to the alley. The westerly front of the barbershop when originally built was 8 feet east of Huron street, but later in 1925 it was extended west to Huron street, and the stairway was closed. The difference between the grades of the street and the alley constituted a barrier to vehicular traffic which could not ascend or descend stairs so that the building of the barbershop and the later closing of the stairway did not affect the rear of any of the plain-

tiffs' properties so far as receipt or delivery of goods through the alley by vehicles was concerned. The easterly wall of the barbershop extended to 6 feet west of the northeast corner of the Atsalas property but there was still sufficient space in the rear of the Atsalas parcel so as to provide for access to the alley through a rear door that opened into the alley.

Testimony shows that plaintiffs used and required the alley for delivery of goods and a large number of vehicles were backed into the alley at the rear of the respective properties. In fact, one of defendants' photographic exhibits shows vehicles occupying the alley. The course followed by these vehicles as they drove east of the easterly line of the Ambassador Restaurant, if extended, is not clearly shown. It appears, however, that sometime after 1935, a cement block extension of about 6 or 7 feet was built into the alley in the rear of the parcel marked "old brick building" in the sketch, so that trucks proceeding to the north-south private alley would at least to some extent have to use the open space not owned by defendants Carras in the rear of the Ambassador Restaurant. The testimony indicates that even before this cement block extension was built, it was common practice to use the open space in the rear of the restaurant and the buildings north thereof as a means of access to the disputed area. It was also the practice to drive straight east from the disputed area to the north-south private alley, as shown on the sketch.

It appears that the present Ambassador Restaurant building existed since before 1900 and all of the space between the south wall of the Ambassador Restaurant building and the north walls of plaintiffs' buildings, to-wit, 14.25 feet, was used from that time on to the present for making such deliveries. There is no claim that the alley was a way of necessity for plaintiffs' respective properties as goods could also

be delivered through the doors fronting on Michigan avenue.

It does not appear that any objection was made to the building of the barbershop at the west end of the alley over 25 years ago as the owners of the stores continued to have the free and open use of the alley in the rear for commercial purposes. In 1923, there was a 4½-foot platform extending from the old brick building but it was torn down and the cement block extension, referred to above, constructed. However, the platform did not restrict the traffic to the disputed area in a straight easterly-westerly direction from the north-south alley. At the present time, in addition to the cement block extension, there exist a utility pole approximately in the middle of the alley, a few feet beyond the disputed area and a 4-foot obstruction in the rear of plaintiffs Haab's property. The existence of the utility pole also necessitates the use of the open space in the rear of the Ambassador Restaurant. This space is not directly involved in the litigation. The 4-foot obstruction by plaintiffs Haab is not shown to impede the use of the alley in any way.

Part of the area in dispute was first designated as an alley when in 1837 one Pliny Cutler conveyed to Gilman Davis a parcel of land on Huron street described as:

"Together with an alley or right of way over and across the piece of land 10 feet in width lying between the lands herein conveyed and said building erected by Joseph C. Allen on Huron Street."

The Joseph C. Allen building referred to was situated on land part of which now constitutes plaintiffs' properties. It seems obvious that it was used as an alley for over 100 years, although the farthest back we have proof of witnessing its use in the memory of living witnesses is that of 2 aged

witnesses who testified that it was used as an alley for 57 years within their knowledge.

In 1864, George Moorman, grandfather of the present defendant, took title to the Ambassador Restaurant property extending as far east as the north-south alley. In connection with the purchase of the property, George Hill in 1864 deeded an undivided one-half interest in the east 76 feet of the alley to Moorman. In 1881, one Simeon Rowley quitclaimed to the same Moorman the west 100 feet of the alley. In 1892, one Foerster, a successor in title to Gilman Davis, quitclaimed to Moorman the west 65 feet of the alley. The 3 just-mentioned conveyances concerned the original 10-foot alley, which is the southerly part of the present 14.25-foot strip. The north 4.25 feet of today's disputed alley was never specifically referred to in a deed as such and was originally a portion of the Ambassador Restaurant parcel. The proofs do not indicate that it was ever built on. The entire 14.25-foot strip had been used as an alley before 1900 and ever since. The restaurant parcel, and any remaining record title to the alley, passed to the Moormans, present defendants, by inheritance from their grandfather.

Hiram Tooker, who between 1847 and 1857 acquired all of plaintiffs' properties through deeds *that referred to the alley,* conveyed to George Moorman all of the property now embraced in the plaintiffs' parcels with the exception of one Karson parcel. In 1865, Tooker conveyed the other Karson parcel to Simeon G. Rowley.

In the deed of the Haab parcel from Tooker to the elder Moorman, through whom the defendant Moorman acquired title to the property north of the alley, the description includes:

"The privilege of a right-of-way, in, over and upon the alley on the north side of said lot, 10 feet wide to be used in common with the adjoining premises."

The mesne conveyances vesting the title of the Haab parcel in the Haabs (Moorman held the property until his executors deeded it to the Smiths in 1922), referred to the properties as running north to "the south line of an alley."

A deed to the Atsalas property in 1922, as well as a very large number of subsequent mesne conveyances all stated that the property ran north to an alley. It is similarly true of the west Karson parcel, which was deeded first to Ellis in 1862 with the same reference to an alley. The east Karson parcel, never owned by Moorman, was deeded away by Rowley in 1867 to one Miller with a similar reference and all subsequent references were the same. It would serve no useful purpose to set forth over a score of the mesne conveyances, which all referred to the alley as the northern boundary of plaintiffs' properties.

Gus Carras testified that shortly after entering into the land contract dated November 1, 1946, for the purchase of the Ambassador Restaurant property, he had a conversation with Oscar Haab, at which time Moorman and Karson were present; that Haab asked whether he would be willing to lease the land which constitutes the disputed alley at the rear of the barbershop and he refused to lease or sell it. Both Oscar Haab and Karson categorically denied any offer to lease or purchase the alley. Defendant Moorman, who Carras claimed was present, did not testify at all. His silence seems significant. No agreement was entered into and on this record we are inclined to believe Haab and Karson. We do not consider the alleged conversation of any importance and in no event affecting the parcel of Atsalas. It is not claimed he was present.

As to the Atsalas parcel, Moorman's administrator in 1922 deeded to Sam and Irving Osnos, who in 1924 deeded to Hankinson and Wiard. In 1925 the latter agreed with Moorman that Moorman was to have the

right to insert joists in the north wall of the building and aid in enlarging the barbershop to the west. In return Moorman agreed as follows:

"That, whereas, the parties of the first part are the owners of all that certain piece or parcel of land, situate and being in the city of Ypsilanti, county of Washtenaw and State of Michigan, and described as follows: Beginning where the north line of Congress street (now Michigan avenue), crosses the east line of Huron street and at the south west corner of lot 176, original plat of the village (now city) of Ypsilanti; thence north along the east line of Huron street, 51 10/12 feet to an alley; thence east 41 1/12 feet, more or less, to the center of the brick wall on the east side of the Tooker block; thence south along the center of said brick wall to the north line of Michigan avenue, formerly Congress street; thence west along the north line of Congress street to the place of beginning.

"And whereas, the said Burton G. Moorman is the owner of lands directly north of those above described, and whereas, the premises owned by first parties are now connected with a sewer which runs under ground from the premises of said first parties on the premises of said Moorman and to the Huron river to the east and whereas it is the desire of first parties to have the use of said sewer perpetually with the right-of-way over the vacant property directly north of the premises above described and now owned by them so long as said right-of-way is vacant and owned by said Moorman, and * * *

"Now, it is hereby agreed that said second parties give and grant to first parties the right to use said sewer in common with others forever for sewer and drainage purposes for the building known as the Tooker block, * * *

"It is also agreed that said first parties are hereby given a right-of-way over the vacant property directly north of the premises above described and now owned by them as long as the said right-of-way

is vacant and owned by the said Burton G. Moorman, or others, and until used for building purposes."

We agree with the defendants that the only possible way meant in the last-quoted clause was the right-of-way in question. When the agreement states that the right-of-way is "directly north of the premises above described" and the only 2 premises described are the Atsalas property and the barbershop tract, then the only possible right could be that in the disputed area. The Ambassador Restaurant was directly north of the barbershop so a way could not exist there; but part of the alley was directly north of the Atsalas tract so we must assume that when the agreement states "the premises above described" it means the Atsalas property. The agreement, however, did not affect the Haab or Karson parcels. This agreement was not recorded until January 19, 1931, some 4 years after Hankinson and Wiard gave a warranty deed of the Atsalas parcel to one Beyer. The deed again stated it ran to an alley. There is nothing to indicate that Beyer had any notice of the agreement. Various conveyances followed, and in 1943, the Michigan Trust Company conveyed the parcel to John Atsalas by deed, again making direct reference to the alley.

Plaintiffs Haab, through Charles A. Smith and Dora Smith, obtained a 4-foot right-of-way in the disputed alley in a 1922 deed of their parcel from the Moormans. This was the south 4 feet of the original 10-foot alley. Defendants argue that the Haabs and their predecessors could not have believed at the time of taking that they had any right to the 10 feet. However, merely because these 4 feet were granted does not necessarily mean that the Smiths and Haabs believed they had no rights to any of the alley. We do not believe that they are barred from claiming an easement in the other 10.25

feet thereof. The right to the south 4 feet was reserved in the contract of sale with the defendants Carras, as heretofore stated.

In 1925, Hankinson and Wiard quieted title to the Atsalas tract; in 1944, the Haabs did likewise as to their tract, including their 4-foot right-of-way. Nothing was said in either action about an easement in the remainder of the alley. Defendants argue, in effect, that these proceedings to quiet title were an attempt to clear all the interests the respective plaintiffs had in their properties; that if they had claimed an easement in the disputed alley, they would have attempted to clear the right to it as the Haabs did when they included the 4-foot easement in their bill to quiet title. It is obvious that each quieted title to that property to which they had record title only. At the time they had no reason to be concerned with any question as to the rights in the alley in which they believed they had an easement appurtenant to the property.

The alley in question for some years contained a 4-foot walk at the south thereof. In 1944, plaintiffs Haab and Karson paved the remaining 10.25 feet of the strip from the rear of the barbershop to approximately 3 feet beyond the extended east line of the Ambassador Restaurant. The alley was thus paved up to the south wall of the restaurant. Defendant Moorman, a vendor in the Carras land contract, was present at least once while the paving was in progress but made no objection whatsoever. This seems very significant.

The city assessor of Ypsilanti testified that the original 10-foot alley was never included on the assessment rolls for taxation, to a length of 52 feet or to the east line of the Ambassador Restaurant if extended in a southerly direction. There does not seem to have ever been any recorded plat of the prop-

erty nor any dedication of the alley for the use of the public.

Considerable reliance was placed by the trial court upon the fact that this disputed alley was not really an alley at all. The testimony above summarized, however, indicates that it has been used and generally considered as an alley beyond the memory of living witnesses. It was so characterized in the various deeds, going back over a century. An alley is a way of convenience. There is no requirement that an alley have a certain type of ending or beginning. It may be a blind alley. The original 10-foot alley was never extinguished for during the past 50 years and longer as there never was a complete merger of all of plaintiffs' and defendants' properties, the dominant and servient estates. This alley apparently has existed for over 100 years, as far as the records show. It is true the nature of the alley has been substantially modified. The use within at least the last 50 years has been of a 14.25-foot alley. It consists now of an area, blocked on one end by the barbershop, and on the other end joined with a north-south private alley. The purpose the alley serves has remained exactly the same. It is true that in the future someone may try to obstruct the way through the open space in the rear of the Ambassador Restaurant, but the rights of plaintiffs through the open space or in the north-south alley are not in question here. At present there is a way to the disputed alley so that it serves all the purposes the alley has ever served. The alley may still be of value to plaintiffs if the east end beyond defendants' property is closed. The utility pole and the obstruction by Mr. Haab of 4 feet of the alley do not bar vehicles from using the areaway and so are not material. It still remains an alley in which plaintiffs claim a perpetual easement.

To establish their right to enjoin the obstruction by defendants Carras, plaintiffs allege that they possess an easement in the disputed alley. They maintain, first, that since George Moorman once owned property north and south of the alley and conveyed plaintiffs' properties as bounded by an alley, those who take under him are estopped to deny that plaintiffs have a right-of-way. Plaintiffs also allege that they and their predecessors have held the alley adversely under such circumstances as will vest in them a right-of-way by prescription. Defendants argue that there can be no relief because the area in question was not an alley. We have already considered and rejected that contention as well as their claims that there were certain acknowledgments of ownership made by plaintiffs or their predecessors inconsistent with either estoppel or adverse use.

A word should be said here as to the exact area which plaintiffs claim. They alleged a right to only 10 feet of the alley in their original bill of complaint but claimed 14.25 feet at the hearing and on the appeal. And although they originally claimed an area greater in length, plaintiffs concede in their reply brief that the area between the properties of the parties, 52 feet in length, is the only area in dispute in this litigation. Plaintiffs state that owing to the haste necessary to seek an injunction, they described the alley as only 10 feet wide, although its width is 14.25 feet. It appears from the testimony that the use of the alley for at least 50 years has been of a 14.25-foot alley. Thus, if prescription exists, it will be founded on the use of a 14.25-foot alley, not of the 10-foot alley originally set out in the Pliny Cutler deed and carried down to date by omission from the tax assessment rolls. Similarly, estoppel should exist as to the visible portion of the alley being used as such at the time the party seeking to assert the

estoppel takes the property, and, as we will indicate, at the time of the deeds the basis of the claimed estoppel, the 14.25-foot alley had already been used openly and notoriously for 22 years or more. We, therefore, limit our discussion to the westerly 52 feet of this alley with a width of 14.25 feet.

Plaintiffs ask that their bill be considered as amended so as to include the entire alley with a width of 14.25 feet. This may be done. Since the issue in the case is the right to a perpetual easement in the alley and the testimony relates to the entire disputed area, 52 feet by 14.25 feet, the pleadings will be considered as amended and thus conform with the proofs as to an alley of the dimensions claimed by plaintiffs. *St. Cecelia Society* v. *Universal Car & Service Co.,* 213 Mich 569. See Court Rule No 72 (1945) and *Hay* v. *LeBus,* 317 Mich 698.

We believe that defendants are estopped to deny that plaintiffs Atsalas and Haab have a right-of-way appurtenant to their property in the alley. It is a general rule of law that:

"If land conveyed is described as bounded * * * by a private alley or passageway, the grantor is said to be estopped as against the grantee, to deny that such an alley or passageway exists, that is, he grants to that extent a right of way appurtenant to the land conveyed. And it has been decided that if the conveyance bounds the land on a way which is actually laid out, the grantee acquires a right of passage for the whole length of such way, so far as it is upon the grantor's land, and not merely for the length of the boundary of the land conveyed." 2 Tiffany, Real Property (2d ed), pp 1313, 1314.

See 2 Thompson on Real Property (Perm ed), § 479; 28 CJS, Easements, § 40; 17 Am Jur, Easements, § 46. The question has been passed upon in this State as to streets, *Crosby* v. *City of Greenville,* 183 Mich 452; *Kirchen* v. *Remenga,* 291 Mich

94; and *Plumer* v. *Johnston,* 63 Mich 165, but the same reasoning applies to alleys. In *McConnell* v. *Rathbun,* 46 Mich 303, the Court held that where there is proof as to one parcel as to easement or right-of-way, it included the entire way necessary for the use of the parcel. In *Frawley* v. *Forrest,* 310 Mass 446 (38 NE2d 631, 138 ALR 999), the court said:

"When a grantor conveys land as bounded by a street or way, this is not merely a description by the grantor, and his heirs and those claiming under him are estopped to deny that there is a street or way to the extent of land so bounded on the way, and the grantee acquires by the deed a perpetual easement and right of passage on, up and over it. This is a right, not only coextensive with the land conveyed, but for the entire distance of the way as it is then actually laid out or clearly indicated and prescribed. * * * Such a deed gives the grantee rights by estoppel not only in that part of the passageway that lies opposite his land, but also, by necessary implication, to such outlet or termination as will make the way available for its intended purpose. If nothing else is contained in the deed to define it, the extent of the grantee's rights beyond the limits of his land will depend upon, and may be shown by, extrinsic facts, as they existed at the time of the conveyance. * * * A way acquired in this manner is not a way of necessity."

It is urged by defendants that no estoppel can exist in favor of plaintiff Atsalas by reason of the 1925 Hankinson-Moorman agreement in which Hankinson and Wiard received a grant of the disputed right-of-way "so long as said right-of-way is vacant and owned by said Moorman;" thereby indicating that they were not misled by the designation of the alley as a boundary in all the deeds originating from the Moormans. And we will assume that the original parties to the agreement could not argue estoppel.

However, Beyer took the property in 1927 again with a deed running "north to an alley." All of the deeds since the Moorman-Osnos deed so described the property. Plaintiffs allege that Beyer had no notice whatsoever of the agreement and defendants do not deny this. It appears affirmatively that there was no notice of record until 1931, after Beyer bought the property. He had a right to rely upon the record and Moorman was estopped as against Beyer to deny Beyer's rights in the alley. Even though subsequent takers had notice of the agreement, they succeeded to Beyer's rights, and estoppel also existed in their favor. As the Moormans themselves delayed for years in recording the agreement, we find no equities in their favor.

At the time of the original deeds of the Haab and Atsalas tracts from the Moorman estate in 1922, the alley in existence and in use was 14.25 feet wide and had been so used since prior to 1900. Therefore, estoppel in favor of plaintiffs Atsalas and Haab existed as to the entire 14.25-foot width of the alley, except that 4 feet which had been granted to the Haabs by deed.

No estoppel can exist in favor of plaintiff Karson for the reason that Moorman deeded away the east Karson parcel before he obtained title to the alley. And in no case could estoppel exist as to the west Karson parcel that was never owned by Moorman.

We further hold that plaintiff Karson has a right of an easement by prescription in the alley. The trial court in its opinion refers to the case of. *Zemon* v. *Netzorg,* 247 Mich 563, which held that one might not tack his adverse holdings for less than the prescriptive period of 15 years, even if the predecessor's holdings are shown to be adverse, if there is no conveyance to him or in his chain of title purporting to convey such an easement. One Adam Schaner, however, held the Karson parcels for more than 30 years

and so established in his own name a valid easement without tacking. Once established, the right-of-way was an easement appurtenant and therefore passed by the deed of the dominant estate although not expressly mentioned in the instrument of transfer, and even without the word "appurtenances." See *Wortman* v. *Stafford*, 217 Mich 554; *Stockdale* v. *Yerden*, 220 Mich 444; *Smith* v. *Dennedy*, 224 Mich 378; *Greve* v. *Caron*, 233 Mich 261; *Sullivan* v. *O'Brien*, 235 Mich 245; *Parrish* v. *Heskett*, 241 Mich 560; *First National Trust & Savings Bank* v. *Smith*, 284 Mich 579 (116 ALR 1074); *Akers* v. *Baril*, 300 Mich 619; *Collins* v. *Stewart*, 302 Mich 1; *Myers* v. *Spencer*, 318 Mich 155.

It was further shown by some elderly witnesses that the alley had been used for delivery of goods to the Schaner parcels during the entire time they were owned by Schaner, as well as continuously up to the present time. The same testimony indicates that for 20 years or more of the time that Schaner held the property, the alley so used was 14.25 feet wide. We believe the case of *Berkey & Gay Furniture Co.* v. *Valley City Milling Co.*, 194 Mich 234, is directly in point although the trial court tried to distinguish it. The opinion in that case quotes with approval from numerous authorities to the effect that when the passageway has been used openly and notoriously for over a quarter of a century, it is unnecessary to show by positive testimony that the use was claimed as a matter of right, but that after such user the burden is on the plaintiff *(sic)* to show that the use was only permissive. (Applying to the instant case the burden would be on the defendants to show that the use was only permissive.) See, also, *First National Bank of Bay City* v. *Brooks*, 204 Mich 164; *St. Cecelia Society* v. *Universal Car & Service Co.*, *supra; Outhwaite* v. *Rodgers*, 214 Mich 346; *Engleman* v. *City of Kalamazoo*, 229 Mich 603; *Roberts*

v. *Wheelock*, 237 Mich 689; *Burkhart* v. *Zimmerman,* 239 Mich 491; *Outhwaite* v. *Foote,* 240 Mich 327; *Sallan Jewelry Co.* v. *Bird,* 240 Mich 346; and *Beechler* v. *Byerly,* 302 Mich 79.

The alley had been used continuously, openly, and notoriously. It became an appurtenant easement to the Schaner properties. Karson, the successor, asserted his rights to it by constant use. It is true that Karson, as well as the other plaintiffs, allowed certain obstructions to be erected in the way, but it appears that this did not prevent the use of the alley for deliveries to his property, and there is no other indication that he felt he or his predecessors felt they held permissively. The alley was referred to in the description of the property and while it was paved, at least with the acquiescence of Mr. Moorman, during the latter period, it was being used by Karson and his predecessors in title as a matter of right, not by permissive use, and he retained this right to an easement for the use of the property.

In view of the above, we have not found it necessary to discuss plaintiffs' other contentions. We have carefully examined any other of defendants' contentions material to this determination and have found them without merit.

Plaintiffs will be decreed to have a right-of-way in a 52-foot by 14.25-foot alley, that area between the properties of the respective parties extending from the back of the barbershop to the extended east line of the Ambassador Restaurant, subject to the grant of a 4-foot way to plaintiffs Haab.

The decision of the trial court is reversed and one will be entered in this Court in accordance with this opinion. Plaintiffs shall have costs of both courts.

NORTH, C. J., and DETHMERS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.