# STATE OF MICHIGAN

# COURT OF APPEALS

KIM and CONNIE METHNER,

        Plaintiffs-Appellants,

v

VILLAGE OF SANFORD,

        Defendant/Cross-Defendant-
        Appellee,

and

MID-VALLEY AGENCY, INC.,

        Defendant/Cross-Plaintiff-Appellee,

and

MALLEY CONSTRUCTION, INC.,

        Defendant.

UNPUBLISHED
August 23, 2016

No. 326781
Midland Circuit Court
LC No. 12-009082-CH

Before: OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

In this prescriptive easement case, plaintiffs' appeal centers on the trial court's order denying plaintiffs' motion for partial summary disposition and granting defendants' motions for summary disposition.[1] For the reasons stated in this opinion, we reverse the trial court's order and remand for entry of partial summary disposition in plaintiffs' favor.

---

[1] Defendant Malley Construction, Inc. settled with plaintiffs and has not participated in this appeal. We use "defendants" in the plural when referring to Village of Sanford and Mid-Valley Agency, Inc. together.

-1-

This appeal involves three adjacent parcels of property along West Saginaw Street in the Village of Sanford, Michigan. The first parcel is owned by defendant Mid-Valley Agency, Inc., and Mid-Valley's business building is on it. The record reflects that at one time a post office was on the lot. Adjacent to the first lot is a vacant parcel that is also owned by Mid-Valley. Plaintiffs refer to the vacant parcel as the "Access Parcel." The third parcel is owned by plaintiffs and is referred to as the "Studio Building" because a photography studio is located on it. The record reflects that plaintiffs acquired the Studio Building parcel in 2011 from Terry Howson. At his deposition, Howson testified that his family had owned the parcel for years, and that he had taken possession of it from his grandparents in the late 1960s or early 1970s. Howson, who was 70 years old at the time he was deposed, testified that the building on the parcel had been a meat market and that he had helped his uncle and grandfather by delivering meat for the business since he was 8 or 10 years old.

In the summer of 2011, the Village of Sanford developed plans to reconstruct and improve its downtown "streetscape," including Saginaw Street. In order to do so, the Village acquired easements for the sidewalks in front of the parcels at issue in this case. Ultimately, the Village decided to put a "curb bump-out," i.e. a wider sidewalk with no parking spaces, and a crosswalk directly in front of the access parcel. As a result, the curb cut that allowed vehicular traffic to the rear of the buildings was removed. Although plaintiffs attempted to stop the project, they received no response from the Village. With the closure of the access drive, plaintiffs had no access to the rear of their building, which they had just renovated to allow handicap access. In their complaint, plaintiffs alleged that they had a prescriptive easement in the access parcel and that the Village of Sanford's streetscape project had interfered with their use of the easement. Plaintiffs moved for partial summary disposition on the issue of the easement's existence, and defendants also moved for summary disposition.

The trial court denied plaintiffs' motion and granted summary disposition in favor of defendants, finding that there was no prescriptive easement on the access parcel. Relying on the decision *Frandorson Props v Northwestern Mut Life Ins Co*, 744 F Supp 154 (WD Mich, 1990), and *Wood v Denton*, 53 Mich App 435; 219 NW2d 798 (1974), the trial court concluded that Howson's use of the access parcel "was mutual, although not permissive, and not adverse for the duration of his ownership." As a result, the trial court dismissed Count I of plaintiffs' complaint. Initially, the trial court found that questions of fact remained regarding the scope of the sidewalk easements plaintiffs and Mid-Valley had granted the Village, so the court did not grant summary disposition on Counts II and III of plaintiffs' complaint. The Village moved for reconsideration, and, on reconsideration, the trial court concluded that Counts II and III were derivative of Count I. The court therefore dismissed the remaining counts in plaintiffs' complaint. Thereafter Mid-Valley's cross-claim against the Village was dismissed by stipulation. This appeal followed.

Plaintiffs argue on appeal that the trial court erred in denying their motion for partial summary disposition and in granting defendants' motions for summary disposition.[2] We agree.

---

[2] We review de novo a trial court's decision to grant summary disposition under MCR 2.116(C)(10). *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004). A (C)(10) motion

In *Mulcahy v Verhines*, 276 Mich App 693, 700; 742 NW2d 393 (2007), we explained:

> A prescriptive use of land . . . is either

> (1) a use that is adverse to the owner of the land or the interest in land against which the servitude is claimed, or

> (2) a use that is made pursuant to the terms of an intended but imperfectly created servitude, or the enjoyment of the benefit of an intended but imperfectly created servitude. [citing 1 Restatement Property, 3d, Servitudes, § 2.16, pp 221–222; emphasis omitted).]

> An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years. MCL 600.5801(4). The burden is on the party claiming a prescriptive easement to show by satisfactory proof that the use of the defendant's property was of such a character and continued for such a length of time that it ripened into a prescriptive easement. [*Mulcahy*, 276 Mich App at 699 (case citations and quotation marks omitted).]

"The term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will." *Mumrow v Riddle*, 67 Mich App 693, 698; 242 NW2d 489 (1976); *Goodall v Whitefish Hunting Club*, 208 Mich App 642, 646; 528 NW2d 221 (1995). "Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder." *Mumrow*, 67 Mich App at 698; *Goodall*, 208 Mich App at 646. The party claiming the easement need not "make express declarations of adverse intent during the prescriptive period." *Mumrow*, 67 Mich App at 698; *Goodall*, 208 Mich App at 646. In Michigan, the prescriptive period is 15 years. MCL 600.5801(4); *Mulcahy*, 276 Mich App at 699.

Plaintiffs bought their property in 2011 and so have not used the access parcel long enough to claim a prescriptive easement based on their own ownership. However, if the use by plaintiffs' predecessor in title, Howson, satisfied the elements of a prescriptive easement, then plaintiffs acquired that easement when they purchased the property, even if it was not mentioned in the deed or the parties' dealings. See *Haab v Moorman*, 332 Mich 126, 143-144; 50 NW2d 856 (1952).

The trial court erred by failing to apply Michigan precedent, under which a presumption of hostile use arises when an alleged easement has been in use for longer than the statutory

---

tests the factual sufficiency of the complaint, and "we consider the substantively admissible evidence actually proffered in opposition to the motion. Thus, when such a motion is properly brought, the nonmovant must . . . produce admissible support for its opposition in order to defeat the motion." *Id*. at 120 (citation and internal quotation marks omitted). Actions to quiet title are equitable and thus are also reviewed de novo. *Killips v Mannisto*, 244 Mich App 256, 258; 624 NW2d 224 (2001).

period and the origin of that use is unknown. The trial court should have applied *Haab*, as clarified by *Widmayer v Leonard*, 422 Mich 280, 290; 373 NW2d 538 (1985): "Once plaintiffs presented evidence that they had used the disputed land for over fifty years, the burden of producing evidence shifted to defendants to establish that plaintiffs' use was permissive." Although the trial court concluded that the *Frandorson* Court declined to apply the presumption because the way was "one of mere convenience" rather than a way of necessity, the Court in *Haab* and the Courts in several cases cited by *Haab* applied the presumption despite the fact that the cases did not involve a way of necessity. See *Haab*, 332 Mich at 139 ("An alley is a way of convenience"); *Loehr v Cochran*, 14 Mich App 345, 346; 165 NW2d 485 (1968); *Dyer v Thurston*, 32 Mich App 341, 343; 188 NW2d 633 (1971). Thus, binding caselaw clearly supports plaintiffs' assertion that all they had to establish to give rise to the presumption of hostile use is that the use was open, its origins are unknown, and that the use occurred for longer than the prescriptive period.

The trial court's application of the "mutual use" doctrine also was not in accord with binding Michigan law. Historically, the doctrine has been applied when owners of adjoining lots share a driveway that is partly on both (or all) parcels so that all the parcels are mutually burdened and benefited. See, e.g., *Wilkinson v Hutzel*, 142 Mich 674, 675; 106 NW 207 (1906); *Worden v Assiff*, 317 Mich 436, 439; 27 NW2d 46 (1947); *Wasilewski v Kowal*, 320 Mich 473, 474; 31 NW2d 697 (1948); *Banach v Lawera*, 330 Mich 436, 438; 47 NW2d 679 (1951). "Mutual" is not the same as simultaneous or concurrent; rather, it means "1. Generally, directed by each toward the other or others; reciprocal. 2. (Of a condition, credit covenant, promise, etc.) reciprocally given, received, or exchanged. 3. (Of a right, etc.) belonging to two parties; common." *Black's Law Dictionary* (10th ed). Thus, Howson's unilateral use of his neighbor's property without permission is not "mutual use" even if the neighbor was also using the property.

Howson's testimony established that the origins of the use of the access parcel were unknown and the use was already established when he was a child, some 60 years earlier. Thus, the use had continued for well past the prescriptive period of 15 years and no one knew if it began as a permissive use or a hostile use. Mid-Valley argues that Howson's testimony does not show anything more than permissive use; however, in order to make a prima facie showing that the use was hostile, all plaintiffs had to show was that the origins of the use were unknown and that the use had continued for more than the prescriptive period. *Widmayer*, 422 Mich at 290; see also 1 Restatement Property, 3d, Servitudes, § 2.16, comment *g*, pp 233-234, and Reporter's Note, pp 246-247 (citing *Widmayer*) ("The majority of states recognize a presumption of adverse use arising from evidence of use for the prescriptive period without evidence establishing that the initial use was permissive."). Given these requirements, Howson's testimony shows that the presumed hostile use might predate even his own possession, as his awareness of his grandparents' use (of unknown origin) began at least around 1951 through 1953 and was continuing when Howson took possession of the parcel 15 to 20 years later. Under these facts, plaintiffs sufficiently established a prima facie case that the presumption of hostile use applied in this case.

The Village of Sanford asserts that plaintiffs' use is the same as that of the general public because, according to plaintiffs' complaint, customers used the access parcel. However, even assuming that plaintiffs' customers equate with the general public, there was almost no *testimony* to this effect. Howson stated that only he, his wife, post office trucks, Mid-Valley's employees,

and the garbage truck used it: "The customers parked in front of the building mostly" and "Nobody as far as I know" used it otherwise. Moreover, Howson's use included receiving deliveries, which would be different from the use by the general public.

Once a plaintiff establishes a presumption of hostile use, the burden then shifts to those opposed to the easement to provide evidence that the use was permissive. *Widmayer*, 422 Mich at 290. Howson testified that, although he and his neighbors had never discussed it, he used the access parcel with their full awareness. The only evidence that permission had been granted was the statement in the affidavit of Mid-Valley's owner, who said he had expressly given Howson permission to use the parcel. But Mid-Valley acquired the access parcel in 1985, long after the prescriptive period had run in favor of Howson and his predecessors, and the silence of Mid-Valley's predecessors does not equate with *permission*, but with *acquiescence*.[3] Notably, the trial court expressly found, "[Howson's] use was mutual, *although not permissive*, and not adverse for the duration of his ownership." When the trial court expressly found the use was *not* permissive, under *Widmayer*, 422 Mich at 290, it should have at that point ended the analysis in plaintiffs' favor as a matter of law.

We reverse the trial court's order granting summary disposition in favor of defendants and remand for entry of an order granting plaintiffs' motion for partial summary disposition. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[3] "Title or rights in lands founded on prescription originate from the fact of actual, adverse, peaceable, open, and uninterrupted possession for such length of time that the law presumes that the true owner, by his acquiescence, has granted the land, or interest to the land, so held adversely." *Turner v Hart*, 71 Mich 128, 138; 38 NW 890 (1888); see also *Marr v Hemenny*, 297 Mich 311, 314; 297 NW 504 (1941). "One claiming a prescriptive easement must prove that use was with the owner's knowledge and acquiescence. In this context, acquiescence does not mean license or permission in the active sense but means passive assent or submission, quiescence, or consent by silence." 25 Am Jur 2d, Easements and Licenses in Real Property, § 44, p 714 (footnotes omitted). This definition of acquiescence differs from a mere failure to object and does not, by itself, constitute permission. See *Turner*, 71 Mich at 138.