EMERSON v ARNOLD (AFTER REMAND)

Docket No. 78-3775. Submitted June 11, 1979, at Lansing.—Decided
September 6, 1979.

Plaintiff, William H. Emerson, and defendant's decedent, Warren
A. Emerson, were brothers engaged in two business partner-
ships involving two basically identical buy-sell agreements for
the express intention of avoiding "a discontinuance of the
business of the firm[s]" and assuring each partner that "his
respective estate will receive the full value for his interest".
The agreements established an initial valuation for each part-
nership interest and provided for the purchase of life insurance
policies on each other's life to supply purchase funds. The
agreements recited that the stipulated valuations would remain
in effect "unless and until" different valuations were estab-
lished, "provided, however, that as soon as practicable after
July 1st and January 1st of each year hereafter, said partners
shall reaffirm the valuation last made or establish a new value
for said respective partnership interests". The brothers never
reaffirmed or reevaluated the partnership interests. Plaintiff's
brother died and plaintiff tendered the proceeds of the insur-
ance contracts on his brother's life to defendant, Raymond V.
Arnold, executor of his brother's estate. Defendant refused to
convey decedent's interest in the partnership. Plaintiff sued
defendant in the Jackson Circuit Court for conveyance of the
interests and testified that whenever the brothers felt their
respective interests in the partnerships exceeded the insurance
coverage they simply bought more insurance. Defendant coun-
terclaimed, alleging plaintiff had not paid the full value of
decedent's interest. The court, Russell E. Noble, J., granted
summary judgment for plaintiff, finding that the appropriate

REFERENCES FOR POINTS IN HEADNOTES

[1] 71 Am Jur 2d, Specific Performance § 4.
[2] 27 Am Jur 2d, Equity § 19.
[3] 27 Am Jur 2d, Equity § 239.
[4] 46 Am Jur 2d, Judges §§ 166-169.
[5] 27 Am Jur 2d, Equity §§ 266, 267.
[6] 5 Am Jur 2d, Appeal and Error § 900.
[7] 17 Am Jur 2d, Contracts §§ 245, 255.

means of determining the value of decedent's interest had been utilized, that the conditions for the transfer of decedent's interest to plaintiff were satisfied and that there was no ambiguity in the agreements or the partners' subsequent conduct sufficient to raise a question of fact.

The defendant appealed. The Court of Appeals, in an order of October 30, 1975, granted the plaintiff's motion to affirm the summary judgment. The defendant then sought leave to appeal to the Supreme Court. In lieu of granting leave to appeal, the Supreme Court vacated the summary order of affirmance of the Court of Appeals and remanded the case to the Court of Appeals for plenary consideration. 397 Mich 821 (1976). On remand, the Court of Appeals reversed the trial court, and remanded for trial, holding that there was a genuine issue of fact and that summary judgment for plaintiff was improper. 92 Mich App 159 (1979). A trial was then held on the merits of the case. The trial court determined that the parties had intended that the "full value", which plaintiff was required to pay under the buy-sell provisions of the agreements, was the amount of the life insurance proceeds. A judgment granting specific performance for plaintiff was entered, Russell E. Noble, J. The defendant appeals, raising three issues: 1) whether defendant was entitled to a trial by jury on the issue of liability, 2) whether the trial judge should have been disqualified from hearing the case by reason of his having granted the plaintiff's motion for summary judgment which was reversed on appeal, and 3) whether the trial court properly determined, pursuant to the buy-sell provisions of the partnership agreements, that the full value of the partnership interests of the deceased partner required only the payment of the proceeds of life insurance received upon that partner's death. *Held:*

1. The trial court was construing a written instrument, a proper function of a court of equity. The defendant was not entitled to a trial by jury.

2. The defendant's motion to disqualify the trial judge failed to show any allegations of actual prejudice. The denial of the motion to disqualify the trial judge was without error.

3. The intent of the partners, as evidenced by the buy-sell provisions of the agreements, was to avoid a discontinuation of the business of the firms and to assure each partner that his respective estate would receive the full value for his interests. A discontinuance of the business of the firms has been avoided, leaving only the ascertainment of the meaning of "full value". The term in this case, means the greatest worth of the deceased partner's interest. The full value of the deceased brother's

interest is in excess of the insurance proceeds tendered by the plaintiff to the defendant. The trial court's construction of the agreements is contrary to the intent of the parties.

Reversed and remanded for further proceedings, with a new trial judge to be assigned.

1. SPECIFIC PERFORMANCE — EQUITY.

An action for specific performance of an agreement is equitable in nature.

2. EQUITY — CONTRACTS — CONSTRUCTION OF WRITTEN AGREEMENT.

The construction of a written agreement in the course of an action seeking equitable relief is a proper function of a court of equity.

3. EQUITY — JURY TRIAL.

A party is not entitled to a jury trial in an action presenting only equitable issues.

4. JUDGES — DISQUALIFICATION OF JUDGE — PREJUDICE — BIAS.

Actual prejudice or bias must be shown before a trial judge will be disqualified; the fact that a judge was involved in a prior trial or other proceedings between the parties does not disqualify the judge from subsequently conducting the trial of the case.

5. APPEAL AND ERROR — EQUITY — DE NOVO REVIEW.

The findings of a court of equity are reviewed *de novo* by the Court of Appeals, with due deference being given to the findings of the trial court.

6. APPEAL AND ERROR — FINDINGS OF FACT.

The Court of Appeals is required to sustain on appeal the findings of a trial court unless the Court of Appeals becomes convinced, upon review of the evidence, that had it heard the evidence in the first instance it would have been compelled to rule contrary to the ruling actually made by the trial court.

7. CONTRACTS — INTENTION OF PARTIES — REASONABLE INFERENCES — CONSTRUCTION OF CONTRACT.

The intention of the parties to a contract, as expressed in their agreement, and the reasonable inferences therefrom must be controlling in the construction of the contract.

*Rosenburg, Stanton, Bullen & Nelson, P.C.* (by *Philip M. Moilanen),* for plaintiff.

*Edward L. Cobb, P.C.,* for defendant.

Before: ALLEN, P.J., and T. M. BURNS and D. E. HOLBROOK,* JJ.

## AFTER REMAND

D. E. HOLBROOK, J. This case involves two partnership agreements between two brothers, involving a printing company and a grocery store. One of the brothers died in September of 1968, thus ending the co-partnerships. The survivor of the brothers, plaintiff herein, tendered $59,665.20, the proceeds from life insurance policies taken out by plaintiff on the life of defendant's decedent. Plaintiff claimed this was the proper value to be paid the estate under the agreements for the interest of the decedent. The administrator of the decedent's estate, defendant herein, refused the tender, claiming the agreements called for *full value payment,* and that the $59,665.20 tendered was greatly insufficient because the full value of the decedent's interests would require an additional payment of $96,000.

Plaintiff filed a complaint September 14, 1971, seeking specific performance of the partnership agreements between plaintiff and his brother, Warren A. Emerson, deceased, including the conveyance to plaintiff of all partnership real estate and personal property. The defendant, administrator of the Estate of Warren A. Emerson, deceased, filed on November 3, 1971, an answer and counterclaim praying that the court enter judgment for defendant for the unpaid share of the full value of the partnership interests.

The plaintiff filed a motion for summary judg-

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ment denying relief to defendant under his counterclaim, and granting the relief prayed for by plaintiff for specific performance. There were several amendments to the original motion and several answers filed thereto by defendant. On February 11, 1975, the trial court issued an opinion determining the motion for summary judgment and on February 21, 1975, signed an order in accord with the opinion, dismissing the defendants counterclaim and ordering summary judgment for plaintiff granting him specific performance as prayed for in his complaint.

This summary judgment was appealed to this Court by defendant and our Court granted the plaintiff's motion to affirm the summary judgment on October 30, 1975. This order was appealed to our Supreme Court, resulting in the order of our Court being vacated and remanded to our Court for plenary consideration. On remand our Court filed a per curiam opinion, stating in pertinent part:

"Plaintiff and defendant's decedent were brothers. In 1956 they entered into two separate partnership agreements, respectively involving a printing company and a small grocery store. Through their attorney, the brothers established two, basically identical buy-sell agreements to provide for disposition of the assets of these partnerships upon the death of either brother. Their express intention was to avoid 'a discontinuation of the business of the firm[s]', and to assure each partner that 'his respective estate will receive the full value for his interest'.

"The agreements establish an initial valuation for each brother's share of $25,000 in the printing business and $20,000 in the grocery store. These sums were to be guaranteed by the proceeds from life insurance policies purchased by each brother on the other's life.

"The agreements further recited that the stipulated

valuations would remain in effect 'unless and until' different valuations were established, 'provided, however, that as soon as practicable after July 1st and January 1st of each year hereafter, said partners shall reaffirm the valuation last made or establish a new value for said respective partnership interests'.

"The brothers never reaffirmed or revalued the interests despite the fact that the attorney who drafted the agreements provided them with prepared forms for that purpose. According to plaintiff, the surviving partner, whenever the brothers felt that their respective interests in the partnerships exceeded the insurance coverage they simply bought more insurance. At the time of decedent's death, September 10, 1968, the partnerships' insurance proceeds on his life totalled $59,665.20.

"As provided in the agreements, plaintiff paid this amount to decedent's executor (the same attorney who had drafted the agreements). Defendant, however, refused to convey decedent's interest in the two partnerships as required by the agreements alleging that plaintiff had not paid the full value of decedent's interest. Defendant counterclaimed that the original valuations had expired and that defendant was entitled to one-half of the fair market value of the businesses as of the date of decedent's death. Defendant thus sought $96,000 in addition to the $59,665.20 in insurance benefits previously tendered.

\* \* \*

"It is settled that '[f]or a summary judgment granted under GCR 1963, 117.2(3) to be upheld on appeal, it must be clear that, giving the opposing party the benefit of every reasonable doubt, there is no genuine issue as to any material fact'. *Wynglass v Prudential Life Ins Co of America,* 68 Mich App 514, 516; 242 NW2d 824 (1976). Applying this rigorous standard, we respectfully disagree with the opinion of the trial court.

"The mandatory language of the agreements that the partners 'shall' reaffirm or revalue their interest manifests their apparent intent to keep the values current. While the agreements are explicit as to what steps had to be taken to make a new valuation effective, they do not mention what effect, if any, the partners' failure to

comply with this seemingly mandatory provision was to have on the values initially established. Where there is uncertainty in an agreement because of incompleteness, it is for a jury to determine the true nature of the agreement. *Anderson v Brown,* 21 Mich App 699; 176 NW2d 457 (1970).

\* \* \*

"Giving every reasonable doubt to defendant, it cannot be said that this case presents no genuine issue as to any material fact.

"Reversed and remanded for trial. Costs to plaintiff."

Prior to trial on remand, a pre-trial conference was held on June 17, 1977, and the pre-trial summary states in part:

"This pretrial conference is limited to the factual issues of liability, which shall be tried before the Court, without a jury, in accordance with the agreement of counsel recited by Judge Dalton in his unchallenged pretrial summary dated March 9, 1973."

Defendant moved to set aside the pre-trial summary and order. Defendant further sought to have a jury trial on the issue of liability and to have Judge Noble disqualified from hearing the matter.

All of these motions were duly denied with the matter of disqualification assigned to and decided by another judge in the circuit, on September 28, 1977.

Trial was held on March 29, 1978. The parties entered a stipulation of facts and further stipulated the various depositions and exhibits were to be admitted into evidence.

On August 22, 1978, the trial court issued an opinion in which it was determined that the parties had intended that the "full value" which plaintiff was required to pay under the buy-sell provisions of the agreements was the amount of

the life insurance proceeds. Accordingly, specific performance was ordered in plaintiff's favor. Judgment was entered pursuant to that opinion on September 1, 1978.

Defendant appeals from that judgment as of right and raises three issues on appeal.

I. *Was the defendant entitled to a trial by jury on the issue of liability?*

At the March 1973 pre-trial conference the summary provided in part as follows:

"Liability will be tried to the Court first by agreement of counsel and the valuation of assets will be tried to a jury."

On remand, a pre-trial conference was held on June 17, 1977, and that summary reiterated the arrangement made in the March 1973 pre-trial summary.

The trial on remand was the first trial held on the merits. The summary judgment cannot qualify as an initial trial. See, *Anno: Withdrawal or disregard of waiver of jury trial in civil action, 64 ALR2d 506, pp 574-578.*

In any event the pleadings filed in the action disclose that the dispositive issue was what the defendant was entitled to receive under the buy-sell agreements for the one-half partnership interests. This issue is presented in plaintiff's prayer for specific performance of the agreements. The action for specific performance of an agreement is equitable in nature. *Curbelo v Macomb County Community College Trustees,* 38 Mich App 432, 434; 196 NW2d 843 (1972); 5A Corbin, Contracts, § 1137, p 97. The construction of a written agreement in the course of an action seeking equitable relief is a proper function of a court of equity. *Salvador v*

*Connor,* 87 Mich App 664, 674; 276 NW2d 458 (1978); 5 Callaghan's Michigan Civil Jurisprudence § 171, p 743. A party is not entitled to a jury trial on an action presenting only equitable issues. 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 412-414; *Abner A Wolf, Inc v Walch,* 385 Mich 253; 188 NW2d 544 (1971). The defendant was not entitled to a trial by jury.

II. *Was the trial judge disqualified from hearing the case by reason of his having granted plaintiff's motion for summary judgment which was reversed on appeal?*

GCR 1963, 405.1, in effect at the time the motion to disqualify was decided, provided in part:

"The judge shall be deemed disqualified to hear the action when the judge:

\*   \*   \*

"(3) is personally biased or prejudiced for or against any party or attorney;

\*   \*   \*

"(8) for any other reason is excluded or disqualified from sitting as a judge at the trial."

The fact that a judge was involved in a prior trial or other proceeding between the parties does not disqualify the judge from subsequently conducting the trial of the case. *People v Lincourt,* 221 Mich 674, 675; 192 NW 572 (1923). Actual prejudice or bias must be presented before a trial judge will be disqualified. *Irish v Irish,* 59 Mich App 635, 639; 229 NW2d 874 (1975), *Moldovan v Allis Chalmers Manufacturing Co,* 83 Mich App 373, 379; 268 NW2d 656 (1978).

An examination of defendant's motion to disqualify and the brief in support thereof fails to show an allegation of actual prejudice. The denial

of defendant's motion to disqualify the trial judge was without error.

III. *Did the trial court properly determine, pursuant to the buy-sell provisions of the partnership agreements, that the full value of the partnership interests of the deceased partner required only the payment of the proceeds of life insurance received upon that partner's death?*

The trial court was correct when it stated that the articles of co-partnership provided for payment of the proceeds of the insurance on the life of a deceased partner's interest. This is stated in the Ray Printing Company articles drawn up in 1956. The North Side Take-Out articles, drawn up in 1956, provided similar provisions; however, in 1961 new articles of partnership for North Side Take-Out were executed on January 23. Therein it is stated "rescinding a prior partnership agreement entered August 24 A.D., 1956". This last agreement has the following provision: "If the parties of the first and second part are unable to agree on the interpretation or legal effect of this agreement in any particular, the differences between them shall be determined by three (3) arbitrators, one to be appointed by each of the parties and the third appointed by the first two so chosen, and the determination of said board of arbitrators shall be deemed final and binding, as to liabilities in dispute and as to the constructive and legal effect of this agreement as to settlement and computation."

This provision is not effective for the reason that the parties have elected not to avail themselves of it.

It is evidence, however, that in 1961, the parties recognized a possibility of disagreement as to the legal effect of their agreement.

Now in connection with the value of the insur-

ance taken out on the respective lives of the partners as being the value of each partner's interest in the two partnerships, we go to the record.

In 1956, as to Ray Printing the value in the agreement was set at $25,000 for each and the insurance obtained for each was $25,000. In the same year for the North Side Take-Out the value was set at $20,000 for each partner but only $5,000 of insurance was obtained. In 1957, insurance in the amount of $10,000 for each partner was added. Nothing was added in 1961 when the partners entered in the new agreement for the North Side Take-Out partnership. At that time the valuation was stated as $20,000 for each partner.

In order for the parties to have a proper amount of insurance for just the stated value of each partner—$25,000 for the print shop and $20,000 for the grocery store each would have been required to have at least $45,000—however, the facts are that from 1956 to 1957 they had only $30,000, and after 1957 until 1964 they had only $40,000 of insurance each. Then in 1964 they each added $10,000 of insurance—and for the first time they each had $50,000 of insurance. $5,000 each more than the original value placed on the two partnerships by the parties both in 1956 and 1961.

The first part of § 12 of the Ray Printing agreement provides as follows:

"It is further agreed to provide upon the death of either partner for the purchase by the survivor of the interest in the said co-partnership of the partner so to die, thereby avoiding a discontinuance of the business of the firm, and assuring each partner that his respective estate will receive the full value for his interest in said co-partnership as hereinafter determined in the event of death."

In the 1961 articles of partnership for the North Side Take-Out business there is no provision in § 12 thereof for the purchase by a surviving partner of a deceased partner's interest. Said. § 12 in the 1961 agreement reads as follows:

"It is agreed upon the execution of this partnership agreement, the value of each partner's respective interest in said partnership shall be as follows:

| | |
|---|---|
| Howard Emerson | $20,000.00 |
| Warren Emerson | $20,000.00 |

and the above valuations shall remain the value of said respective partnership interest for the purpose of determining the purchase price unless and until a different valuation is established. Such a new valuation may be established at any time. Provided, however, that as soon as practicable after July 1st and January 1st of each year hereafter, said partners shall reaffirm the valuation last made or establish a new value for said respective partnership interests. To supersede any valuation made prior therto, any new valuation must be reduced to writing and signed by both partners. It is further agreed that this method of establishing the valuation of the partnership interests shall be used in section 11 of this agreement if either of the partners should choose to terminate said partnership as outlined in section 11, but only if the date of the last valuation or reaffirmance of valuation is not more than two years prior to date of sending of notice of termination to the other partner."

Section 12 e of the 1956, Ray Printing partnership agreement reads as follows:

"(e) It is agreed upon the execution of this co-partnership agreement, the value of each partner's respective interest in said partnership shall be as follows:

| | |
|---|---|
| Howard Emerson | $25,000.00 |
| Warren Emerson | $25,000.00 |

and the above valuation shall remain the value of said respective co-partnership interests for the purpose of determining the purchase price unless and until a

different valuation is established. Such a new valuation may be established at any time. Provided, however, that as soon as practicable after July 1st and January 1st of each year hereafter, said partners shall reaffirm the valuation last made or establish a new value for said respective partnership interests. To supersede any valuation made prior thereto, any new valuation must be reduced to writing and signed by both of said partners. It is further agreed that this method of establishing the valuation of the partnership interests shall be used in paragraph eleven (11) of this agreement if either partner should choose to terminate said partnership as outlined in paragraph eleven (11), but only if the date of the last valuation or reaffirmance of valuation is not more than one year prior to date of sending of notice of termination to the other partner."

The parties failed to follow the mandated requirements in both partnership agreements to reaffirm twice a year, on July 1 or January 1, the last made valuation or establish a new value. This in spite of the fact that the attorney gave them forms to fill out and reminded them at least once of their duty to do this. Plaintiff, William Howard Emerson, when asked if he were so told by the attorney, replied that he did not remember.

These partners were busily engaged in managing their growing businesses. Their bookkeeping was mainly for the purpose of complying with the income tax laws.

From a review of the transcript, it is evident that the actual value of the businesses was increasing from year to year. The cost of insurance was an item to be considered. The plaintiff's claim that the partners increased the insurance to equal the value of their interests in the partnerships is inaccurate as evidenced hereinabove.

We review on appeal the findings of a court of equity *de novo,* with due deference being given to

the findings of the trial court, *Barnett v International Tennis Corp,* 80 Mich App 396; 263 NW2d 908 (1978). This Court is required to sustain the findings of the court below unless it becomes convinced, upon review of the evidence, that had it heard the evidence in the first instance it would have been compelled to rule contrary to the ruling actually made by the trial court. *Salvador v Connor,* 87 Mich App 664; 276 NW2d 458 (1978), *lv den* 406 Mich 966, (1979).

The intention of the parties as expressed in their agreement and the reasonable inferences therefrom must be controlling in the construction of the contract. *Rowe v Wililam Ford & Co,* 257 Mich 646, 649; 241 NW 889 (1932); 5 Callaghan's Michigan Civil Jurisprudence, § 158, p 720. It must be determined whether the trial court properly ascertained the partners' intention with respect to the "full value" of the partnership interests.

The subject buy-sell agreements in the two partnership articles evidence that the parties' primary intentions in the case of death of a partner were *to avoid a discontinuation of the business of the firms and to assure each partner that his respective estate would receive the full value for his interests.*

The continuation of the firms has been maintained and is not in issue in this case. The ascertainment of the meaning of "full value" of the deceased partner's interests in the partnerships is a subject for our determination.

"Value" is defined in Webster's New World Dictionary as "the worth of a thing in money or goods". One of the definitions of the word "full" in the same dictionary, which we think is appropriate, is "having reached the greatest size". We interpret that "full value" means the *greatest*

*worth* of the deceased partner's interest in the partnerships.

We find that the contract must be construed in this light in order to satisfy the expressed fundamental intent of the parties. The construction of the contract by the trial court fails to accomplish this intent.

We assume, as does the plaintiff, that the full value of the deceased brother's interests in the partnerships is in excess of the insurance proceeds tendered by plaintiff to defendant administrator. We determine that the construction of these contracts by the trial court is contrary to the intent of the parties.

We note that the trial court heard this case on stipulated facts, depositions and exhibits, a comparatively cold record which we likewise consider in this *de novo* review hearing.

We are convinced upon review of the evidence, that had we heard the evidence in the first instance we would have been compelled to rule contrary to the ruling actually made by the trial court. We therefore reverse and remand for further proceedings consistent with this opinion. In deference to the trial judge, who has heard all the proceedings thus far, another judge shall be assigned to hear further proceedings herein.

Costs to the defendant.