REED v SOLTYS

Docket Nos. 45631, 50543. Submitted October 22, 1980, at Detroit.— Decided May 19, 1981.

Plaintiffs, Allen W. Reed and Katherine G. Reed, and defendants, Leo J. Soltys and Delores Soltys, are owners of adjoining lots. A common driveway straddles the boundary line between the two lots and has been in service for nearly 50 years. Defendants sought the cooperation of plaintiffs to improve the condition of the two-track dirt driveway. Plaintiffs refused, and defendants decided to build a driveway on their side of the boundary line. They also began to construct a fence along the boundary line. Plaintiffs sought injunctive relief in St. Clair Circuit Court, claiming that they had a prescriptive easement in that part of the driveway on defendant's property. They also claimed that the improvements to the road had changed the natural flow of the surface water, causing it to pool up on their property. Plaintiffs thereafter amended their complaint to request damages. Defendants counterclaimed for damages to their property from plaintiffs' continual trespass, and demanded a jury trial. Defendants later amended their counterclaim to include additional damages. The trial court granted a preliminary injunction restraining further construction of the driveway or fence and directing removal of certain posts and stones already placed along the boundary, Ernest F. Oppliger, J. Six months

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 5 Am Jur 2d, Appeal and Error §§ 703-880, 882.

[3-5, 7, 8] 25 Am Jur 2d, Easements and Licenses § 49 *et seq.*
  Tacking as applied to prescriptive easements. 72 ALR3d 648.
  Extent of, and permissible variations in, use of prescriptive easements of way. 5 ALR3d 439.

[4] Adverse possission based on encroachment of building or other structure. 2 ALR3d 1005.

[6] 25 Am Jur 2d, Easements and Licenses §§ 118, 119.

[9, 10] 1 Am Jur 2d, Adjoining Landowners § 30.
  78 Am Jur 2d, Waters §§ 119-121.

[11] 42 Am Jur 2d, Injunctions § 318.

[12] 42 Am Jur 2d, Injunctions § 336.

[13] 42 Am Jur 2d, Injunctions § 340.

later, defendants were found to be in contempt of court for failing to obey the preliminary injunction. Thereafter, a bench trial on the equitable issues resulted in the issuance of a permanent injunction in favor of plaintiffs, the court concluding that a prescriptive easement had arisen when the lots were held by previous owners and that defendants had failed to prove that the mutual use was always permissive. Defendants appeal from the judgment as well as from the earlier contempt ruling. *Held:*

1. The cumulative effect of testimony given at trial was to establish that use of the driveway had been mutually permissive up until the present dispute. The trial court's conclusion to the contrary was without justification.

2. The record reflects that plaintiffs failed to establish in any manner that they were the owners of an upper estate with natural drainage across defendants' property. In the total absence of proof that defendants interfered with water run-off from plaintiffs' land, the restriction against defendants' activities was erroneous.

3. Although the preliminary injunction was improperly granted by the trial court, there is no suggestion that the court lacked jurisdiction to impose it and, where there is no lack of jurisdiction, an injunctive order must be obeyed until overturned on direct appeal.

4. The record reflects that defendants had 2-1/2 years following the initial contempt citation but prior to the imposition of their fine to comply with the injunctive order. Defendants' asserted defense that they were prevented from complying because the ground was frozen and could not be moved was correctly rejected.

The injunction is vacated, the contempt citation is affirmed and the case is remanded for jury trial on the remaining legal issues.

1. APPEAL — EQUITY — DE NOVO REVIEW.

The findings of a court in an equity matter are reviewed *de novo* by the Court of Appeals, with due deference being given to the findings of the trial court.

2. APPEAL — EQUITY — FINDINGS OF FACT.

The Court of Appeals is required to sustain on appeal the findings of a court in an equity matter unless the Court of Appeals becomes convinced, upon review of the evidence, that had it heard the evidence in the first instance it would have been

compelled to rule contrary to the ruling actually made by the trial court.

3. EASEMENTS — PRESCRIPTIVE EASEMENTS — ADVERSE USE.

A prescriptive easement is founded on the supposition of a grant and arises from the open, notorious, continuous and adverse use across the land of another for a period of 15 years.

4. EASEMENTS — PRESCRIPTIVE EASEMENTS — ADVERSE USE.

Mutual or permissive use of an area will not mature into a prescriptive easement unless the period of mutuality ends and adverse use continues for the statutory period.

5. EASEMENTS — PRESCRIPTIVE EASEMENTS — USE IN EXCESS OF PRE-SCRIPTIVE PERIOD.

A presumption of a grant of an easement arises where there has been use of the disputed area for many years in excess of the prescriptive period.

6. EASEMENTS — PRESUMPTION OF GRANT — PERMISSIVE USE — BUR-DEN OF PROOF.

The burden of proving that use of an easement was permissive is on the owner of the servient estate once a presumption of a grant of an easement arises.

7. EASEMENTS — MUTUAL USE — ACQUIESCENCE.

Acquiescence for a long term of years between adjoining owners in mutual use of a driveway does not create title in either party for the reason that the use is not hostile or adverse.

8. EASEMENTS — PERMISSIVE USE — DURATION OF PERMISSIVE USE.

The permissive character of use of an easement which was permissive at its inception will continue of the same nature and no adverse use can arise until there is a distinct and positive assertion of a right hostile to the owner and brought home to him.

9. ADJOINING LANDOWNERS — SURFACE WATERS — RIGHT TO DIS-CHARGE.

One owning property higher in elevation has a right to discharge surface waters onto the property of one owning lower lying land.

10. ADJOINING LANDOWNERS — SURFACE WATERS — NATURAL FLOW-AGE.

The natural flowage of surface water from an upper estate is a servitude which the owner of the lower estate must bear; he

cannot hold it back by dikes or dam its natural channels of drainage to the injury of the owner of the upper estate.

11. INJUNCTIONS — CONTEMPT PROCEEDINGS — COLLATERAL ATTACK.
The propriety of an injunctive order may not be collaterally attacked. by a party during contempt proceedings brought against him for failure to comply with the order.

12. INJUNCTIONS — PERIOD OF EFFECTIVENESS.
A valid injunctive order issued by a court with proper jurisdiction must be obeyed until overturned on direct appeal.

13. .INJUNCTIONS — FAILURE TO COMPLY.
Failure to comply with an injunction may be excused by severe weather, ill health and poverty.

*Flanigan, Monaghan & Traver,* for plaintiffs.

Leo J. Soltys, *in propria persona.*

Before: DANHOF, C.J., and M. J. KELLY and D. L. SULLIVAN,* JJ.

D. L. SULLIVAN, J. Plaintiffs and defendants are next-door neighbors. They own cottages along the St. Clair River in Cottrellville Township, St. Clair County. Prior to this dispute, the cottages were served by a two-track dirt strip leading to Highway 29 and straddling the boundary line between the two parcels of land. In the past, the driveway has been subject to obstruction by mud and undrained surface water during the winter and spring and even after ordinary rains.

In 1976, the defendants desired to improve the state of the driveway, but their offer for a cooperative project to do so was refused by plaintiffs. Defendants then decided to build the driveway on their own property and, in May of 1977, began to construct a fence along the boundary line. Before the construction, feelings of ill will. apparently

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

existed between the parties. Leo Soltys testified that Allen Reed's careless driving along the track caused damage to Soltys' car and near-injury to his granddaughter. Soltys returned from a weekend in Detroit to find a completed section of his fence torn up. Undeterred, defendants proceeded with work on the driveway and fence.

Plaintiffs commenced suit on August 16, 1977, requesting temporary and permanent injunctive relief against construction and maintenance of the fence and further improvements to the driveway. Plaintiffs claimed a prescriptive easement in that part of the driveway on defendants' property and argued that improvements to the road had changed the natural flow of the surface water, causing it to pool up on their property. Subsequently, plaintiffs amended their complaint to request damages with regard to the surface water problem. They also sought damages for defendants' alleged interference with a common seawall and for other trespasses. Defendants counterclaimed for damages to their property from plaintiffs' continual trespass, and demanded a jury trial. Defendants later amended their counterclaim to seek compensation for damages to their automobiles, personal property and real estate.

The trial court granted a preliminary injunction on November 7, 1977, restraining defendants from further construction of the driveway or fence and directing defendants to remove certain fence posts and stones already placed along the boundary. On May 8, 1978, defendants were found in contempt of court for failing to obey the preliminary injunction.

Following a bench trial of the equitable issues, a permanent injunction was granted in favor of plaintiffs. The lower court concluded that a pre-

scriptive easement had arisen when the parcels were held by previous owners, noting that the common driveway had been used for upwards of 50 years and that the defendants had failed to prove that the mutual use was always permissive. Defendants appeal from this judgment as well as the earlier contempt ruling.

This Court reviews equitable matters *de novo,* with due deference being given to the findings of the trial court. This Court is required to sustain those findings unless convinced that had it heard the evidence in the first instance it would have been compelled to rule in a contrary manner. *Emerson v Arnold (After Remand),* 92 Mich App 345, 357-358; 285 NW2d 45 (1979). Upon review, we are convinced that the findings of the lower court are clearly erroneous and we therefore reverse.

A prescriptive easement is founded on the supposition of a grant. It arises from the open, notorious, continuous and adverse use across the land of another for a period of 15 years. *Outhwaite v Foote,* 240 Mich 327, 331; 215 NW 331 (1927), *Hopkins v Parker,* 296 Mich 375, 376; 296 NW 294 (1941). Mutual or permissive use of an area will not mature into a prescriptive easement unless the period of mutuality ends and adverse use continues for the statutory period. *Hopkins v Parker, supra, Wood v Denton,* 53 Mich App 435, 441; 219 NW2d 798 (1974). However, when use has been in excess of the prescriptive period by many years, a presumption of a grant arises and the burden shifts to the servient estate owner to show that use was merely permissive. *Beechler v Byerly,* 302 Mich 79, 83; 4 NW2d 475 (1942), *Haab v Moorman,* 332 Mich 126, 144; 50 NW2d 856 (1952).

The testimony established that the common

drive has been in use upwards of 50 years, although there was no evidence of its status when first created. In 1936, defendants' lot passed to Margaret Hingelberg, who constructed the cottage now occupied by defendants. The property subsequently passed to Mrs. Hingelberg's daughter before being acquired by defendants. The lot now owned by plaintiffs was originally held by Wesley and Florence Densmore, who later deeded it to Roy and Kathryn Nicholson. The Nicholsons quitclaimed the property to their children, who sold it on land contract to plaintiffs. The driveway has been used by the Densmores, Nicholsons and plaintiffs. The lower court concluded that this extended period of use placed upon defendant the burden of proving that it was permissive in nature. The court found that defendants failed to present such proof.

Edwin Hingelberg, the grandson of Margaret Hingelberg, testified to his familiarity with both parcels, indicating that he had spent his summers at his grandmother's cottage during the time period it was held by the family. Hingelberg stated that his grandmother and the Densmores were good friends and that each used the driveway as needed with mutual permission. The permissive use continued while the adjacent property was owned by the Nicholsons. Even plaintiff Allen Reed testified that he believed that he had mutual ownership of the driveway with defendants. The cumulative effect of the testimony was to establish that use of the driveway has been mutually permissive up until the present dispute. The lower court's conclusion to the contrary was without justification.

Acquiescence for a long term of years between adjoining owners in mutual use of a driveway does

not create title in either party for the reason that the use is not hostile or adverse. *Wilkinson v Hutzel,* 142 Mich 674; 676-677; 106 NW 207 (1906). This principle was applied in *Milewski v Wolski,* 314 Mich 445; 22 NW2d 831 (1946), a case factually similar to the present situation. In *Milewski,* the plaintiff claimed to have a prescriptive easement in a cement driveway centered on the boundary line between the parties' respective properties. The Court refused to recognize an easement, noting that because the right of way rested on permission, permission could be withdrawn at any time. *Id.,* 450.

Likewise, in *Hopkins v Parker, supra,* the Court denied the existence of a prescriptive easement in a driveway following an extended period of mutual use. The Court wrote:

"It is evident that this driveway originated as a convenience common to the needs of both properties and without thought on the part of the users of any claim of exclusive right thereto. We are unable to discover any change in such mutual user. A prescriptive easement does not arise out of a mutual use of a driveway until mutuality ends and adverse user commences and continues for the period essential to the fastening of such a right. If the user was permissive at inception, such permissive character will continue of the same nature and no adverse user can arise until there is a distinct and positive assertion of a right hostile to the owner and brought home to him. 9 RCL, p 778; *Village of Manchester v Blaess,* 258 Mich 652." 296 Mich 375, 379.

The Court's reasoning is applicable to the present case. Defendants provided proof that the use of the easement was permissive; adverse use did not commence until the time of this dispute.

The judgment below also prohibited defendants

from any earth-fill activities which would interfere with the natural run-off of surface waters. Plaintiffs had claimed that the improvements to the driveway caused water to pool on their property.

Under Michigan law, one owning property higher in elevation has a right to discharge surface waters onto the property of one owning lower lying land. *Robinson v Belanger,* 332 Mich 657, 662; 52 NW2d 538 (1952). The natural flowage of surface water from an upper estate is a servitude which the owner of the lower estate must bear, and he cannot hold it back by dikes or dam its natural channels of drainage to the injury of the owner of the upper estate. *Id., Crane v Valley Land Co,* 203 Mich 353, 359; 169 NW 18 (1918).

Nonetheless, the record reflects that plaintiffs failed to establish in any manner that they were the owners of an upper estate with natural drainage across defendants' property. Although one witness testified that defendants' work on the driveway caused the flooding, plaintiffs' own photographs showed standing water on the property long before any improvements began. Defendants and all of the owners of neighboring property who testified stated that their land flooded as well, even when drainage tile was utilized to remedy the problem. It is apparent that flooding from surface water was common to all of the nearby owners of low-lying riverfront property. In the total absence of proof that defendants interfered with water run-off from plaintiffs' land, the restriction against the earth-fill activities was erroneous.

Although our conclusions require that the injunction be vacated, we must, nevertheless, affirm defendants' contempt citation. The preliminary injunction of November 7, 1977, directed that defendants remove obstructions already placed on

the driveway and return it to a usable condition. Defendants were found in contempt for noncompliance on May 8, 1978, and were again directed to comply or face a $300 fine. The $300 fine was imposed on March 10, 1980, when plaintiffs presented evidence that compliance had not been made. Defendants argue and we agree that the injunction was improperly granted. However, an individual may not collaterally attack the propriety of an injunctive order during contempt proceedings brought against him for failure to comply with the order. Absent a lack of jurisdiction, the order must be obeyed until overturned on direct appeal. *State Bar of Michigan v Cramer,* 56 Mich App 176, 180; 223 NW2d 713 (1974), *Berry Pontiac, Inc v Burke,* 19 Mich App 648, 652; 173 NW2d 243 (1969). There is no suggestion that the lower court lacked jurisdiction.

Defendants argued below that they were prevented from complying because the ground was frozen and could not be moved. Failure to comply with an injunction may be excused by severe weather, ill health and poverty. *Scott v Layng,* 59 Mich 43; 26 NW 220 (1886). However, the record reflects that defendants had two and one-half years to comply with the original injunction, including nearly two years following the initial contempt citation but prior to the imposition of the fine. The trial judge was correct in rejecting the defense asserted.

The injunction entered below is hereby vacated; defendants' contempt citation is affirmed. Remanded for jury trial of the remaining legal issues. No costs, neither party prevailing in full.