**FRANDORSON PROPERTIES, a Michigan Limited Partnership, and Sport Services, Inc., a Michigan Corporation, Plaintiffs and Counter–Defendants,**

v.

**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a Wisconsin Corporation, and Samuel Zell, Trustee of Illinois Land Trust No. 2308, Defendants and Counter–Plaintiffs.**

No. G89–50665 CA.

United States District Court,
W.D. Michigan, S.D.

May 2, 1990.

C. Mark Hoover, Fraser, Trebilcock, Davis & Foster, Lansing, Mich., for Frandorson.

Michael J. Otis, Abood, Abood & Rheamme, Lansing, Mich., for Sport Services.

Robert J. Jonker, Warner, Norcross & Judd, Grand Rapids, Mich., for Northwestern Mut. Life Ins. Co.

## OPINION OF THE COURT

ROBERT HOLMES BELL, District Judge.

This action presents a dispute between the owners of two adjoining parcels of property. The dispute concerns the use of an access route which traces the border between the two parcels, but which lies exclusively on defendants' parcel. Defendants want to alter the access route, though both property owners have freely used it for over 30 years. Based on this longstanding, continuous use, plaintiffs ask the Court to declare that a prescriptive easement has arisen in their favor and to enjoin any alteration of the access route which would interfere with their use thereof. Defendants have in turn filed a counterclaim for declaratory judgment to the effect that plaintiffs have no easement and that defendants may use all their property free from interference by plaintiffs. There is no dispute as to the facts: both plaintiffs and defendants move for summary judgment.

I

The entire property at issue is located in Lansing, Michigan. It was acquired as a whole by Francis Corr in 1953. At that time, it was undeveloped. Later that year, Corr divided the property into two parcels and conveyed the southerly parcel, parcel B, to the predecessors in title of Northwestern Mutual Life Insurance Company, current owner. These predecessors leased the property for the construction and operation of a Sears, Roebuck and Company ("Sears") retail department store. The lease is currently held by Illinois Land Trust No. 2308, Samuel Zell, Trustee, which also owns the buildings and other improvements situated on parcel B. The Land Trust subleases the buildings and other improvements to Sears, which continues to operate a retail store there.

When Corr conveyed parcel B, he reserved an express easement over the eastern 70 feet thereof to enable convenient access to the northerly parcel, parcel A. Parcel A was then developed into the Frandor Shopping Center ("Frandor") currently owned and operated by plaintiff Frandorson Properties, an entity essentially representing Corr's four sons, to whom his interest passed via trust. Plaintiff Sport Services, Inc., is a tenant of Frandorson Properties, operating a retail business at Frandor.

Since the mid–1950's the northern portion of parcel B has been a paved parking area for Sears customers. The northerly-most 42–foot strip thereof has, for the same length of time, been used as an access route which traverses parcel B from Clippert Street on the west to Morgan Lane, the access easement, on the east. It is undisputed that this "east/west drive," though it lies exclusively on defendants' parcel B, has been continuously used from the beginning by members of the public and employees and customers of both Frandor and Sears. Since the border between parcels A and B is unobstructed, marked only by a line of utility poles, Frandor is very accessible from east/west drive, especially via Frandor Avenue, which proceeds northward from east/west drive, roughly at its midpoint, through parcel A.

There is no evidence that Frandorson or its predecessors or any of its business tenants ever sought, were granted, or were denied permission to use east/west drive. It appears east/west drive, convenient for use by Sears employees and customers, proved to be just as convenient for Frandor employees and customers. Since the latter use has not interfered with, and has been entirely consistent with Sears' use and enjoyment of east/west drive, defendants have not complained or objected. In fact, there appears to have been no communications between the owners of the two parcels concerning the shared use of east/west drive until very recently.

When defendants and Sears acted upon plans to redevelop parcel B by commencing construction of a fence along the length of east/west drive, plaintiffs sought and obtained a temporary restraining order in the Ingham County Circuit Court. Defendants removed the action to this Court on the basis of diversity of citizenship and voluntarily agreed to halt further construction pending this Court's judgment.

## II

It is evident from the parties' cross-motions for summary judgment that there is no genuine issue as to any material fact. Yet, each side maintains application of the law to the undisputed facts compels judgment in its favor.

Plaintiffs contend their continuous use of east/west drive for over 30 years has given rise to a prescriptive easement. They acknowledge that, while their predecessor in title expressly reserved an easement on the east side of parcel B, there is no evidence of any intent to do so with respect to the north side. In fact, they argue, the evidence suggests there was no intent to do so. Yet, plaintiffs ask the Court to declare an easement has arisen through longstanding custom of usage.

Historically, an easement could be acquired only by express grant. 25 *Am. Jur.2d*, Easements and Licenses § 39. In time, the fiction of a "lost grant" was adopted by the courts. *Id.*

[T]hat is, the courts presumed, from the long possession and exercise of right by the claimant with acquiescence of the owner, that there must have been originally a grant by the owner to the claimant which had become lost. Although it is said that the presumption of grant is founded on the idea that if there had not been a grant, the owner would have put an end to the wrongful occupation before expiration of the time fixed by statute, it is considered the duty of the court to enforce the fiction, not because either the court or jury believes the presumed grant to have actually been made, but because public policy and convenience require that long-continued possession shall not be disturbed.

*Id.* Thus, a public policy purpose underlies recognition of prescriptive rights. On the other hand, prescriptive rights are not favored in the law, inasmuch as they necessarily work corresponding losses or forfeitures of others' rights. *Id.* The obvious tension between these interests is well highlighted in this case.

A prescriptive easement is founded on the supposition of a grant. *Reed v. Soltys*, 106 Mich.App. 341, 346, 308 N.W.2d 201 (1981). "It arises from the open, notorious, continuous and adverse use across the land of another for a period of 15 years." *Id.;* M.C.L. § 600.5801(4), M.S.A. § 27A.5801(4). The burden of proving the existence of the claimed easement rests with plaintiffs. *Widmayer v. Leonard*, 422 Mich. 280, 290–91, 373 N.W.2d 538 (1985).

That plaintiffs' use of east/west drive has been open and notorious and has continued for a period longer than 15 years is not disputed. At issue is whether such use is "adverse." "Adverse use" is a term of art that does not imply ill will. *Mumrow v. Riddle*, 67 Mich.App. 693, 698, 242 N.W.2d 489 (1976). "Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder." *Id.* It is a use of such a nature as indicates that it is claimed as a right and must be

exclusive in the sense that the right does not depend upon a like right in others. *Outhwaite v. Foote*, 240 Mich. 327, 329, 215 N.W. 331 (1927); *Cheslek v. Gillette*, 66 Mich.App. 710, 713–14, 239 N.W.2d 721 (1976). Evidence of adverse use must be clear. *Id.*, 66 Mich.App. at 714, 239 N.W.2d 721; *Hopkins v. Parker*, 296 Mich. 375, 380, 296 N.W. 294 (1941).

■ Application of these principles reveals that plaintiffs' evidence of adverse use is not clear, but equivocal at best. While plaintiffs' use is arguably inconsistent with defendants' rights, it is not inconsistent with the use made by defendants of the same area and has not interfered in any way with defendants' use and enjoyment of their property. In fact, inasmuch as the free use of east/west drive by the public in general has facilitated ease of travel between both parcels in both directions, it appears to have been mutually beneficial to defendants and plaintiffs.

Frandor customers and employees have used east/west drive without having requested or received permission, a use which defendants would have been entitled to prevent. However, there is little evidence that plaintiffs engaged in such use under any claim of right. Plaintiffs have neither expressly declared any adverse intent nor taken action sufficiently hostile to defendants' interests to apprise them that an adverse "right" was being asserted. Nor does it appear that plaintiffs' use of this open private way has been exclusive or has depended upon any "right" distinct from the freedom enjoyed by the general public to use the same.

Based upon the undisputed facts, the Court concludes plaintiffs cannot, as a matter of law, carry their burden of proving adverse use by clear evidence. The reason is succinctly stated in *LeRoy v. Collins*, 176 Mich. 465, 472, 142 N.W. 842 (1913):

It is undoubtedly the law that where a private way is improved by the owner and left open convenient for others, their use of it in common with the owners and those for whose special benefit it was opened is, as a rule, to be regarded as permissive only, and under an implied license.

See also 25 *Am.Jur.2d*, Easements and Licenses § 54. Plaintiffs have not come forward with evidence of adverse use clear enough to overcome the presumption created by this rule. Moreover, to the extent plaintiffs' use may be construed as adverse in some respects, such construction is clearly overshadowed by the fact that open and mutual use of east/west drive has been mutually beneficial. In view of the benefit inuring to defendants and the absence of any detriment resulting from plaintiffs' continued use, such use cannot be deemed to manifest the requisite adverseness to apprise defendants that they must act to secure their rights or risk losing them.

A prescriptive easement does not arise out of a mutual use of a driveway until mutuality ends and adverse user commences and continues for the period essential to the fastening of such a right. If the user was permissive at inception, such permissive character will continue of the same nature and no adverse user can arise until there is a distinct and positive assertion of a right hostile to the owner and brought home to him.

*Hopkins v. Parker, supra*, 296 Mich. at 379, 296 N.W. 294. See also *Banach v. Lawera*, 330 Mich. 436, 442, 47 N.W.2d 679 (1951); *Barbaresos v. Casaszar*, 325 Mich. 1, 8, 37 N.W.2d 689 (1949); *Reed v. Soltys, supra*, 106 Mich.App. at 346, 308 N.W.2d 201; *Wood v. Denton*, 53 Mich.App. 435, 441, 219 N.W.2d 798 (1974). East/west drive was used mutually by plaintiffs and defendants, or their predecessors, from the beginning, and such mutual use has continued unabated. Plaintiffs cannot identify any intervening "distinct and positive assertion of a right hostile to the owner and brought home to him." Thus, the mutual or permissive nature of the use, which cannot ripen into a prescriptive easement, has continued.

Plaintiffs argue the parties' shared use of east/west drive is not "mutual use," citing *Cheslek, supra*, because the drive is not situated partly on both parcels. In *Cheslek*, the court ruled "mutual use" does not apply where the subject drive "was

neither owned half and half by the adjoining lots nor was it maintained for the joint benefit of both parties." 66 Mich.App. at 715, 239 N.W.2d 721. As to the latter criterion, the court observed that the claimant's use of the subject drive, which lay mostly on the servient estate, included construction of an overhang, which prevented uninhibited use of the drive by the property owner. The *Cheslek* court viewed the overhang as reflecting adverse use by the claimant under a claim of right, dispelling any notion that the drive was maintained for the joint benefit of both parties. Here, on the other hand, although east/west drive lies exclusively on parcel B, it appears to have been continuously maintained for the unimpeded use and benefit of both parties. Hence, *Cheslek* is not persuasive authority for the proposition that the present shared use is not "mutual use."

■ Plaintiffs further argue that even if the parties' use of east/west drive has been "mutual," their continuous use of the drive for a period far greater than the 15–year prescriptive period creates a rebuttable presumption of a grant. This presumption is said to shift the burden to defendants to show the use was and has continued to be merely permissive. The argument appears to fly in the face of the rule that a mutual use cannot ripen into a prescriptive easement absent some distinct and positive assertion of a hostile right. It is not without support, however.

> Mutual or permissive use of an area will not mature into a prescriptive easement unless the period of mutuality ends and adverse use continues for the statutory period. *Hopkins v. Parker, supra; Wood v. Denton*, 53 Mich.App. 435, 441, 219 N.W.2d 798 (1974). However, when use has been in excess of the prescriptive period by many years, a presumption of a grant arises and the burden shifts to the servient estate owner to show that use was merely permissive. *Beechler v. Byerly*, 302 Mich. 79, 83, 4 N.W.2d 475 (1942). *Haab v. Moorman*, 332 Mich. 126, 144, 50 N.W.2d 856 (1952).

*Reed v. Soltys, supra*, 106 Mich.App. at 346, 308 N.W.2d 201. As explained in *Wid-mayer v. Leonard, supra* 422 Mich. at 289–90, 373 N.W.2d 538, the burden which shifts to the servient estate owner is the burden of going forward with the evidence. Since defendants have come forward with no testimony or other evidence tending to show that their use was expressly permissive, plaintiffs contend, the presumption of a grant has not been rebutted and they are entitled to summary judgment.

The presumption of a grant, shifting the burden to the servient estate owner, reflects recognition that long-continued use— even mutual use—often gives rise to circumstances which militate against disrupting such use. For instance, in *Haab v. Moorman*, cited in *Reed*, the claimant had used the subject way as a matter of right, in reliance upon which he had made improvements to the way. In *Beechler v. Byerly*, also cited in *Reed*, and in *Widmayer, supra*, a prescriptive easement was sought as to a way of necessity, the use of which was clearly adverse to the servient estate owner. Here, by contrast, no such compelling circumstances exist. East/west drive is not a way of necessity. There are numerous other routes of access to Frandor. If east/west drive is closed, it will pose only minor inconveniences to a handful of Frandorson Properties' tenants, i.e., changes in parking configurations. Moreover, plaintiffs have not used east/west drive under claim of right, have not made improvements that are dependent upon continued use of the drive, and have not used the drive in any manner adverse to defendants' interests.

Under these circumstances, the presumption of a grant would arise, if at all, only as a hollow formality, disconnected from its purpose, and may not be appropriate. In *Wood v. Denton, supra*, for instance, the court did not apply the presumption, so as to shift the burden of going forward with evidence, notwithstanding 26 years of mutual use. Instead, the Court applied the general rule that mutual use will not mature into a prescriptive easement and found that the claimant had failed to carry *his* burden of showing his use was adverse or under claim of right. *Id.*, 53 Mich.App. at

441–43, 219 N.W.2d 798. The same reasoning applies here.

Moreover, even if the presumption of a grant is deemed to apply, shifting the burden to defendants, the Court is persuaded that the presumption, weak as it is, is sufficiently rebutted by the undisputed evidence. First, it is agreed that Francis Corr had no intention of reserving an easement for use of the area when he divided the property into parcels A and B. This point is summarized in plaintiffs' own argument as follows:

> Indeed, any such intention is negated since (1) in 1953 there was not existing development on either Parcel A or Parcel B requiring an easement; (2) had the parties intended to create an easement at the location of the east/west drive, they most certainly would have done so expressly; and (3) no other proofs establish any such "intention" and to so argue that such existed would be pure conjecture.

This fact distinguishes the present situation from *Cheslek, supra,* and *Outhwaite, supra,* two cases relied upon by plaintiffs in which evidence of an attempt or agreement to create an easement was found to dispel the notion that the claimant's use was permissive. Conversely, the parties' agreement that there was no intent to create an easement militates against the presumption that there was a grant and against the notion that plaintiffs' use was under a claim of right, and supports the position that such use was instead merely permissive.

Further, the facts that plaintiffs' use of the drive has been in common with other members of the public, has been consistent with defendants' use of the drive, has never been adverse to defendants' interests, and has never been objected to by defendants all stand as convincing evidence that plaintiffs' use was merely permissive. The present facts are thus similar to those of *Reed, supra,* where the court recognized the presumption of a grant, but found it

easily rebutted. 106 Mich.App. at 347–48. That defendants have failed to produce evidence that plaintiffs' use was only with express permission is not dispositive. The undisputed facts speak for themselves; defendants have carried their burden.

Accordingly, the Court finds the record of undisputed facts, taken as a whole, could not lead a rational trier of fact to find that a prescriptive easement has arisen in favor of plaintiffs. Defendants are entitled to summary judgment, declaring that their title over the area identified as east/west drive is unencumbered by any claim of easement by plaintiffs. Defendants' motion for summary judgment will be granted; plaintiffs' motion for summary judgment will be denied.[1] An order consistent with this opinion shall issue forthwith.

## JUDGMENT ORDER

In accordance with the Court's written opinion issued on May 2, 1990,

IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment with respect to their prescriptive easement claim is DENIED;

IT IS FURTHER ORDERED that plaintiffs' complaint is DISMISSED *in toto;*

IT IS FURTHER ORDERED that defendants' motion for summary judgment as to their counterclaim for declaratory judgment is GRANTED;

IT IS FURTHER ORDERED and ADJUDGED that defendants' title to the property herein referred to as parcel B is unencumbered on its north boundary by any claim of easement by Frandorson Properties;

IT IS FURTHER ORDERED that defendants' second counterclaim seeking injunctive relief for removal of an encroachment by plaintiffs is DISMISSED, based upon

---

1. This ruling disposes of the action *in toto* inasmuch as plaintiffs' claim of easement by estoppel has been voluntarily dismissed pursuant to stipulation and order dated March 8, 1990; and

defendants' counterclaim for injunctive relief, requiring removal of an encroachment by Sport Services, Inc., has purportedly been resolved.

representations of counsel that the claim has been settled.