*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KLINGLER AUTOMATIC INDUSTRIES, INC,

        Plaintiff/Counterdefendant-
        Appellee,

v

CHRISTOPHER SMITH and STEPHANIE
SMITH,

        Defendants/Counterplaintiffs-
        Appellants.

UNPUBLISHED
September 3, 2020

No. 347525
St. Clair Circuit Court
LC No. 18-001817-CH

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

RONAYNE KRAUSE, P.J. *(concurring)*

I concur with the majority, but I write separately to more fully explain why affirmance is proper in this matter. I do not disagree with any of the majority's analysis, I only intend to expand on it somewhat.

## I. FACTUAL BACKGROUND

First, I believe the majority's opinion omits some important factual details. As the majority states, the Smith EO-1 well is located on land owned by Cottrellville Township but only accessible over an access road on defendants' property. The Cottrellville property and defendants' property were a single parcel in 1961, when the owner granted a right-of-way to Panhandle Eastern Pipe Line Company for construction and maintenance of oil pipelines to the Smith EO-1 well. At the time, the Smith EO-1 well was a reef gas well. The specific language in the right-of-way was

> to lay, construct, maintain, alter, inspect, repair, replace, relocate, change the size of, operate and remove a pipe line and from time to time additional pipe line or lines, drips, gates, cathodic equipment, and all appurtenances convenient for the maintenance and operation of said lines and for the transportation of oil, gas, or other substances therein, under, on, over and through the premises hereinafter described, and the Grantee is granted the right of ingress and egress, to, on, from and over the following described premises for the purposes aforementioned…

-1-

The right-of-way also contained further provisions regarding the installation of further pipe, alteration of pipe, and obligations on the part of each party regarding the grantee's access to the pipe and damage to the grantor's property. Panhandle assigned its interest in the right-of-way to Consumers Power Company in 1963.

By 1968, the Smith EO-1 well had been converted from a reef gas well into a salt water disposal well. The property owner entered into a salt water disposal lease with Consumers Power. The stated purpose of that lease was "for the purpose of operating, and maintaining a water input or disposal well, including any abandoned or dry well drilled for oil and gas . . . for salt water disposal purposes . . . " The 1968 lease also conferred "the right to construct, operate, and maintain pipelines, electric lines, compressors, tanks, equipment, and structures thereon, to move, transport, pump, store, discharge, and inject such salt water through wells on the leased premises into subterranean strata." It also stated that the lessee was, "if requested to do so," required to "bury below plow depth any pipe provided for herein." Thereafter, the Smith EO-1 well has been used as a salt water disposal well. Importantly, the parties apparently agree that the salt water has always been transported to the Smith EO-1 well by truck over the access road, not by a pipeline. Shortly after the property was divided into its present two parcels in 1985, Cottrellville Township entered into another salt water disposal lease with Consumer Power. The terms of the 1985 lease were essentially identical to the terms of the 1968 lease. In 1995, Consumers Power released its rights under the 1968 salt water disposal lease.

I believe the majority's recitation of the facts to be otherwise complete.

II. ANALYSIS

In addition to the analysis provided by the majority, I believe it is critical to observe that the plain terms of the 1961 right-of-way,[1] 1968 salt water disposal lease, and 1985 salt water disposal lease all unambiguously pertain to the maintenance or operation of facilities actually on the well site and pipelines to and from the well site. Although the documents all implicitly permit vehicular access to the well for maintenance and operation, they unambiguously do *not* permit the transportation of any substances to or from the well by any means other than pipes. Consequently, the use of the access road to transport salt water to the Smith EO-1 well has never been by right. Rather, trucking salt water to the well has necessarily always been either hostile or permissive.

I cannot find any information in the record indicating whether the use of trucks to deliver the salt water was, prior to defendants' purchase of their property, permissive, hostile, or both at different times. However, as the majority concludes, trucking activity before defendants' purchase is not really relevant in this case. When defendants purchased their property in 2000, they could have immediately determined by reviewing the terms of the right-of-ways that plaintiff and its predecessors had absolutely no legal right to deliver salt water by truck. Even if delivery by truck had been permissive at one time, by eighteen years later, the use had gone on for so long that the burden is clearly on defendants to prove that the use was permissive, and the record reflects that

_____

[1] Because the 1961 right-of-way expressly references "other substances," I would not hold that it is necessarily limited only to oil and gas.

-2-

defendants have not done so.  *Reed v Soltys*, 106 Mich App 341, 346; 308 NW2d 201 (1981).  The trial court therefore properly granted summary disposition in plaintiff's favor.

/s/ Amy Ronayne Krause